## No. 10,013.

### H. REARY, FOR THE USE, ETC., VS. THE LOUISVILLE, NEW ORLEANS AND TEXAS RAILWAY COMPANY.

It is not within the scope of the employment of a baggage-master connected with a railway train, but not shown to have been put in charge of the same, to invite or permit any person or persons to enter and ride on a coach of such train. Permission given in such circumstances cannot create the relation of carrier and passenger between the company and the person thus riding on such car. The company is not liable to such persons for injuries which they may receive, unless for negligence or tortious acts on the part of the company.

A railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it.

A railway company is not liable to a person, whether passenger or trespasser, who in a state of panic or fear jumps out of a train in motion, and is injured thereby, in the absence of proof that such panic or fear was caused or inspired by word or act by an agent or employee of the company.

**A**PPEAL from the Civil District Court for the Parish of Orleans. *Tissot, J.*

---

*Braughn, Buck, Dinkelspiel & Hart* for Plaintiff and Appellee.

*Farrar & Krutschnitt* for Defendant and Appellant:

Railway companies owe no duties to persons who go upon their engines, cars or other means of transportation, as trespassers, and are, therefore, not liable to them for anything less

Reary vs. Railway Company.

than wilful injury. If the trespasser's injuries are the result simply of a failure to per-form that duty which the railway company owes to every one who is rightfully upon its cars or other means of transportation, he cannot recover, for he was not rightfully there; and the railway has not failed to perform any duty which it owed to him. Patterson's Railway Accident Law, pp. 188 to 190; Duff vs. A. V. R. R., 91 Pa. St., 458; C. & N. W. R'y Co. vs. Smith, 46 Mich. 504 (4 A. & E. R. R. cases, 535); Cauley vs. P. C. & St. L. R'y, 95 Pa. St., 395; 98 Id., 498; Hestonville Passenger R'y Co. vs. Connell, 88 Pa. St., 520; Central Br. U. P. R'y Co. vs. Henigh, 23 Kansas, 347; and numerous cases cited in the decisions and authorities above listed.

If a child, whilst playing with other children, enters a car forming part of a train of a railway company, which is being shifted from one track to another in or near its depot yards and not about to start upon a trip over the railway of such company, and whether the child enters such car with or without the permission of the company s agent in charge of the train, the relations of passenger and carrier do not arise. If such permission be given, the child is a mere licensee; if not given, it is a trespasser. But in no event, under such circumstances, can it become a passenger, and the law governing the relations between carriers and their passengers has no bearing on the case. Same authorities as above; and also, Thompson on Carriers of Passengers, p. 42, *et seq.*

If a child, whilst playing about a depot of a railway company, is invited upon, or even placed upon, a train of such company by a baggage-master, or person in charge of the baggage upon such train, but not in charge or control of the train, then the company is not liable for injuries due to the entry of such child upon, or its egress from the cars. In order that a person be liable for the acts of its agents, such acts must be done by such agents in the course of their employment, and within the line of their duties. The mere fact that a wrongful act is committed by a servant, even whilst actually engaged in the performance of the service he has been employed to render, cannot make the master liable. Something more is required. The act must not only be done whilst so employed, but it must pertain to the particular duties of that employment—must be within the scope of his employment. Pierce on Railroads, p. 277; Hansen, tutor, vs. Mansfield, etc., Co., 38 Ann. 111; Snyder vs. Hannibal and St. Joseph R'y Co., 60 Mo. 413; Flower vs. Penn. R. R. Co., 69 Pa. Stat., 210; Chicago R'y. Co., etc., vs. Michie, 83 Ill. 427.

The proximate cause of the damages in this case was the negligence of the injured child in jumping, and of its elder sister in allowing it to jump, from a car in motion; and also the act of that sister in interfering with the child whilst so jumping, and thus dragging it under the car.

---

The opinion of the Court was delivered by

POCHÉ, J.   Suing for the use of his minor child, plaintiff claims damages in the sum of ten thousand dollars for personal injuries inflicted on his child by one of the defendant's trains, through the alleged carelessness and negligence of the company's employees.

Defendant appeals from a judgment of $3000, based on the verdict of a jury.

The evidence is very conflicting on the salient features of the case, but from our reading of the record we find the following pertinent facts from the preponderance of the testimony.

The accident occurred at the company's depot, which is situated on, and occupies the neutral ground or space included between two streets.

3

or thoroughfares, known as North and South Poydras streets, in this city, on a train of passenger cars which had just arrived, had discharged its passengers and their baggage, and was being switched out of the main track, in order to be set at rest on a side track for the night.

While plaintiff's daughter, between eight and nine years of age, was playing in and around the depot, with four other girls a little more advanced in years, one of whom was her sister of about thirteen years of age, the girls took a child's notion of riding on that train, while it was under the operation of being switched off, at about 7 o'clock in the evening in the month of November, 1886.

One of the girls asked and obtained permission so to do, of the baggage-master of the train, who was standing near by preparatory to his leaving for home.

Four of the girls entered one of the passenger coaches and took seats at the end towards the baggage car, and the fifth child caught on, and remained outside on, the steps of the coach. As the train was in the act of being moved out of the main track, at a pretty rapid rate, the girls became alarmed at the belief and fear that the train was running out of the city, and going, as several of them say, "out to Baton Rouge," whereupon they ran out of the coach and precipitately jumped out of the car. It was in that flight that plaintiff's youngest daughter fell, and that her foot was seriously injured by being run over by one of the wheels of the coach.

Under that condition of things the defendant makes the point that the baggage-master had no authority, within the scope of his employment, to grant the request of the children for permission to ride on the train, so as to render the company liable for injuries resulting from such permission. The record shows that the train was not under the charge or control of that employee, but that it was under the responsibility of another and entirely different person, who had no knowledge of the presence of the girls on that train. The record is conclusive on that point, and the authorities are equally clear on the law. The baggage-master has no duty or authority with the train, whether running or at the depot; and his permission to the girls to ride on that train cannot bind or affect the rights or obligations of the company. Pierce on Railroads, p. 277; Snyder vs. H. & St. J. R'y Co., 60 Mo. 413; Gillett vs. Mo. Valley R. R. Co., 55 Mo. 315; Hanson vs. R. R. Co., 38 Ann. 111.

It is in proof that vigorous orders had been given by the management of the company to drive away children who came to play in and

around their depot, and that to the knowledge of the girls many children have thus been ordered away. It is thus made clear that the permission given by the baggage-master was unauthorized under the scope of his employment, and in direct violation of the company's rules and regulations.

It is also in proof, beyond a doubt, and it is not disputed by plaintiff, that the train was not in use or motion, at the time of the accident, to carry passengers under its purpose as a common carrier, but that it was being pulled back and forth, merely and exclusively with the intention of removing the coaches from the track on which they had entered the depot, and of preparing them for the formation of another train for use in the company's business on the next day. Hence, it clearly follows that the relations of carrier and passenger did not arise between the defendant and plaintiff's child.

Now, in one of the cases very strenuously relied on by plaintiff, the case of Railroad Company vs. Stout, 17 Wallace, 657, the Supreme Court of the United States laid down the following pertinent rule:

" That while a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers arising from its negligence or from its tortious acts."

The rule is not only supported by authority but it finds its sanction in principles of reason, common sense and natural justice. It is in fact a universal rule on the subject of the responsibility of common carriers.

But under the circumstances of this case we feel warranted to extend the scope of the rule still further, and to hold the defendant company to the same degree of care towards the children who were in that coach, that it would owe to passengers being conveyed by it on a journey, after payment of their fare.

Our reading of the record has entirely failed to disclose any act of negligence, or dereliction of any duty, on the part of the company, which it owed to those girls, even if they had been regular passengers on a journey over its road. An attempt has been made to show that the panic among the girls and their precipitate flight from the coach were caused by the act of one of the company's employees, who suddenly and without warning blew out the lights in the car, and his act is qualified as reckless and mischievous.

But that contention finds no support in the record. In their testimony, two of the girls state that they did not notice whether there

were any lights in the coach or not; and not one of them is certain of having seen any person or persons put out the lights.

We are entirely satisfied from the evidence that the panic among the girls was caused by the fear that they might have made a mistake, and had entered a train which was going to Baton Rouge. Hence, im- pelled by that fear, they attempted to jump out while the train was in motion. Now, supposing that any passenger on a regular train should labor under a similar mistake, in believing, for instance, that the train was passing by the station to which he was destined, and fearing that he might be carried beyond the same, should jump out as the train was pulling out of the station, and be injured by falling, could the com- pany be held liable for injuries thus received? Evidently not.

In that case as in this, there would be no ground to conclude that the company had been guilty of any negligence towards the passenger on its train. Where is the duty which the defendant corporation owed. to plaintiff's child and which it did not discharge or perform?

By remaining on the coach until it had been switched off on the side- track, she would have been perfectly safe; and could have stepped out, as she and her companions had doubtless intended to, and as they knew that they could, do without the slightest danger.

Who is responsible for the ungrounded fear of the girls that the train was being run out of the city, or perhaps to Baton Rouge, and which is beyond a doubt the proximate cause of the accident? They were alone in a coach, where they had entered voluntarily, with the childish intention of taking a ride while the train was being switched off. They say themselves that after they had taken their seats in the coach, the baggage-master moved from the platform in front of them, and entered the baggage-car, where his duty called him.

There is no pretence that a single word was spoken to them after they had taken their seats in the coach by any officer, servant or other employee of the company, or that they were ordered off the train by any one. In running out, and jumping off, they were impelled by motives with which the company had not the remotest connection or agency.

And in that feature the circumstances of the case are much more favorable to the company that in any of the reported cases on which her counsel rely in their brief. Cauley's case, 95 Pa. St., 395; 98 id. 498; Duff vs. A. V. R. R., 91 Pa. Stat. 458.

Under our view of the case, and from our solution of the pertinent facts flowing from the weight of evidence, we hold that the pivotal:

·question does not hinge on· the contributory negligence of the passen-
.ger, but exclusively on the entire absence of negligence of the com-
pany. Flowers vs. Penna. R. R. Co. 69, Penna. Stat. 210.

Our opinion is that the verdict of the jury is manifestly erroneous,
and that in justice, it must be set aside.

It is, therefore, ordered, adjudged and decreed that the verdict of
the jury be set aside, and the judgment of the district court annulled,
.avoided and reversed, and it is further ordered that plaintiff's demand
·be rejected and his action dismissed at his costs in both courts.