PROVOSTY, J.
The defendants, Irvine and Madox, were tried together for manslaughter. Madox was acquitted. Irvine *437 was convicted, and was sentenced to five years at hard labor; and lie lias apxiealed.
1-Ie was foreman, and Madox was engineer, of a switch engine which between 11 and 12 o’clock at night had moved a Pullman coach to a side track at the passenger railroad depot in the city of Shreveport, and left the coach in position, and was returning to the roundhouse when it came in collision with a passenger train, whereby several persons were killed. The cause of the accident was that, instead of taking the outgoing track for returning to the roundhouse, the engine took the incoming track. It seems that when the engine reached the switch for transferring to the outgoing track, the switch-man announced that it was “spiked,” or, in other words, had been nailed up and put out of service, and that the engineer, without consulting Irvine, took the incoming track, in violation, as he knew, of the rules of the company. Irvine was at the back end of the engine, standing on the footboard. They had gone a little over a quarter of a mile, perhaps half a mile, on this wrong track, when the collision occurred. The engine was moving at five or six miles an hour. The crew jumped off, except the engineer, who set about reversing his engine, and was at his post when the impact came. Those of the crew who survived testified that they knew they were on the wrong track, except Irvine, who testified that he became aware of their being on the wrong track only just before the collision, too late to remedy the situation.
The case is before this court on several bills of exceptions to certain parts of the charge of the court, and to the refusal to give certain special charges.
There could be, and there was, no dispute as to the fact of the collision and of several persons having been killed by it, and of its having happened because the incoming train had no reason to know, or suspect, the presence of the switch engine on this track; and the bills raise no question in those connections.
It will conduce to brevity if, before undertaking to discuss the bills, we come to a definite and clear notion of the law applicable to the disputed points. It is that if the going upon this incoming track was against the rules of the company, and if it was defendant’s duty as foreman to know this, and to see to it that such a thing did not happen, defendant is guilty even if he did not know that the engine was on this wrong track; because, where one is charged with a special duty the nonperformance of which involves danger to the safety of others, the failure to perform the duty even through inattention is gross and culpable, or, in other words, criminal, negligence. On the other hand, though the track was the wrong one for the engine to be on, and defendant knew it, he is not guilty, if he was not charged with a special duty in the premises; and, even though charged with a special duty in the premises, still he is not guilty if in going upon this wrong track he did so, not through negligence, but merely through error of judgment.
In support of the proposition that defendant’s ignorance of the engine’s being upon the wrong track will not exculpate him if as foreman he was charged with the special duty of taking care that it should not go there, we will cite the following:
“Every negligent omission of a legal duty whereby death. ensues is indictable either as murder or manslaughter. If a man, says Arch-bold, take upon himself an office or duty requiring skill or care, if, by his ignorance, carelessness, or negligence, he cause the death of another, he will be guilty of manslaughter.” Bishop, Grim. L. (6th Ed.) § 314, p. 178.
“Omissions are not the basis of penal action, unless they constitute a defect in the discharge of a responsibility with which the defendant is especially invested, though in such cases they may constitute indictable offenses. * * * When a responsibility specially imposed upon the defendant is such that an omission in its performance is, in the usual course of events, followed by an injury to another person or to *439 the state, then the defendant is indictable for such an omission. If the duty is absolute, then defendant is responsible for its nonperformance.” I Wharton on Crim. (9th Ed.) § 130, p. 157.
“We have already seen that an omission is not the basis of penal action unless it constitute a defect in the discharge of a responsibility specially imposed. And the converse is true that, when a lawful duty is imposed upon a party, then an omission on his part in the discharge of such duty, when acting injuriously on the party to whom the duty is owed, is an indictable offense.” Id. § 329, p. 355.
From note 61 L. R. A. 277, we take the following:
“Every negligent omission of a legal duty, whereby death ensues, is indictable either as murder or manslaughter.”
“Where death is the direct and immediate result of the omission of a party to perform a plain duty imposed upon him by law or contract, he is guilty of a felonious homicide.”
The charge of the learned judge a quo was as follows:
“Gentlemen of the Jury:
“(1) The two defendants in this case, Irvine and Madox, are charged in the state’s indictment with the crime of manslaughter, a crime defined by the law as the unlawful killing of a human being without malice.
“(2) The state charges that these defendants while in charge of a locomotive switch or yard engine, in the service of the Kansas City Southern Railroad Company, and operating the same on the railroad ¿yards in the city of Shreveport, collided their engine with a passenger train of the Texas & Pacific Railway Company while on the railroad yard in the city of Shreveport as it was backing into the Union Depot, and by said collision caused the death of the three pereons named in the indictment.
“(3) In your investigation I charge you to bear in mind that these defendants are presumed to be innocent until the state overcomes that presumption by evidence establishing their guilt beyond a reasonable doubt. The defendants are not required to establish their innocence. The state must establish their guilt to that degree of certainty that leaves no reasonable doubt in the minds of the jury as to their guilt. A reasonable doubt is one contradistinguished from a mere conjectural doubt. It is a doubt for which some reason can be given, and must be raised on the evidence or some lack of evidence.
“'(4) You will naturally and logically first inquire as to- the death of one or more of the three persons alleged to have been killed. When you are satisfied as to that fact, you will next inquire and satisfy yourselves that they came to their death by reason of the alleged collision. Being satisfied that one or more of the alleged decedents came to their death by reason of said collision, you will next inquire was this collision simply a misadventure, or was it the result of criminal recklessness or carelessness of some person or persons charged with the handling or operating of one or both of the colliding trains. If you find that the criminal recklessness or carelessness of one or both of these two defendants was the proximate cause of the death of one or more of the alleged decedents, they cannot escape the responsibility for such death, because there were others whose criminal recklessness or carelessness contributed to such death. All who by such collision contributed to said death are likewise guilty.
“(5) The general rule is that, when one by his negligence contributes to the death of another, he is criminally responsible therefor, and that every act of gross negligence and every omission of legal duty whereby death ensues is indictable either as manslaughter or murder.
“(C) If a person does an act which is dangerous without taking proper precaution to prevent danger arising therefrom, and the death of a person results, it is a criminal act against the person killed.
“(7) If the act from which injury to another ensues is one lawful in itself, there must be gross negligence in its performance to warrant criminal liability.
“(8) But, if the act was unlawful in itself, a greater degree of care and caution is required to exempt from criminal liability, and, as a necessary corollary of this rule, it follows that a less degree of negligence is required to make it criminal. The more dangerous (he act done the greater degree of care and caution to guard against injury is required.
“(9) In other words, the rule of law can be brieflj' and correctly stated that the degree of negligence in the performance of an act is to be determined in each particular case by the nature of the act and the particular circumstances of each case.
“(10) In this connection I charge you that the General Assembly of this state has declared all railroads in this state to be public highways and foot passengers are not prevented from walking thereon, and that the drivers of all locomotive engines are held to a greater degree of care and diligence when driving through a populous part of a city than on some parts of the track in a lonely and retired part of the community.
“(11) In this case, as in every one charging death from criminal negligence, it is for the jury to determine from all the facts and circumstances in the case, by the evidence, and under the charge of the court, whether or not the alleged negligence is criminal. If under the circumstances of the case you consider they exercised the care and precaution which prudent and careful persons in the case would have observed, you should acquit them.
“(12) But when the act complained of, though careless in itself, is committed under circumstances from which it might be reasonably in *441 ferred that no injury could happen, the person performing it is not criminally responsible.
“(13) But the mere fact that an accident through an honest misapprehension of the surrounding circumstances or by reason of a mistake in judgment will not excuse the person whose act caused it, when such misapprehension or omission resulted from negligence in failing to observe and obey any rule or precaution which it was his duty to obey and observe.
“(14) Where one by his negligence has caused or contributed to the death of another, it is not necessary that there be any intent or will concurring in the negligence or omission of duty -which causes death.
“(15) If the act wei-e intended and with a purpose of causing death, the homicide would be murder. And, if the negligence of others as well as that of defendant has contributed to the result, he nevertheless will be responsible.
“(16) It will be immaterial that there was negligence on the part of the deceased contributing to the result; the doctrine of contributory negligence having no place in the laws of crime.
“(17) But you are charged to inquire into the guilt or innocence of these two defendants over the death of one or more of the named decedents, due to the criminal negligence or carelessness of one or both of these defendants.
“(18) I call your attention to what the law means by the words ‘criminal negligence’.
“(19) ‘Criminal negligence’ is an unlawful act done carelessly or negligently, or a lawful act done without due caution or circumspection. ^Carelessness’ is criminal and within the limits supplies the place of direct criminal intent, and gross carelessness resulting in injury to others is criminal even if the act done is lawful.
“(20) For the purpose of impressing on you the distinction just referred to, I charge that if you find the switch train left the depot on the night of the collision on the incoming track, instead of the outgoing track, by the order of the defendant Irvine, if you find he was in charge of said engine, and if you also find that it was unlawful or in violation of the rules of the yard to take such incoming- track, he, the said Irvine, is held to a greater degree of care and circumspection than if the taking of said incoming track was not unlawful. If the taking of the incoming track was not unlawful, it would take gross carelessness to make his conduct criminal.
“(21) And if you find that defendant Madox was subject to the orders of Irvine, his superior, he was under no obligation to obey an order ■of his superior that called him to do an act unlawful, or to do a lawful act in a grossly reckless and careless manner.
“(22) You are the exclusive judges of the evidence in this case, as well as to the ci’edibiiity of witnesses. Nine of 'you must agree on a verdict.
“(23) If from the evidence you believe beyond a reasonable doubt that the defendants in charge of the switch engine in leaving the depot on the night of the collision took the incoming track, and that it was unlawful to do so, and failed to exercise the • diligence, caution, and circumspection that good and prudent persons in such department of service are accustomed to exercise, and that such conduct on their part resulted in the collision which caused the death of any one of the alleged decedents, they are both guilty as charged.
“(24) And if you find in taking said incoming track when leaving the depot they did an unlawful act, and that in moving their engine on said incoming track they did not exercise the care and caution which prudent and good officials in such departments are accustomed to exei'cise, but in a grossly careless and reckless manner, they are guilty as charged. But, if after a careful conscientious survey of all the evidence in the case you have abiding with you a reasonable doubt as to their guilt your duty is to give them the benefit of that doubt and acquit.”
Defendant excepted to paragraph 19 of this charge on the ground that “it was contrary to the law governing the case on trial.”
We need hardly say that such a vague and general objection as this can avail nothing.
Defendant excepted also to paragraph 20 of the charge on the ground that it was—
“prejudicial to Irvine’s cause and defense in that it threw the entire responsibility on him, and was, indirectly at least, a comment on the facts and to Irvine’s disadvantage; and for the further reason that, according to the testimony-given in the ease by the railroad men, Iiwine was no more responsible for any accident which might happen than was the engineer, and by this explanatory charge of the court the* entire responsibility was placed on the defendant Irvine.”
We do not find this objection well founded. The case was peculiarly one in which the charging of mere abstract principles of law, without illustrating them by application to the facts of the case, would be of little assistance to the jury; and this charge did no more than make such application. True, as a general proposition, it is not permissible to make special mention of particular facts, or groups of facts, thereby attracting special attention to them and giving them undue prominence; but the charge must cover every phase of the case, and if one of the phases depends upon certain particular facts, or groups of facts, these may have to be alluded to in order to convey to the jury a practical idea of the law of the case. In the
*443 present instance, Irvine, as foreman, occupied a special position, different from that of the engineer, and different principles of law applied to their two cases; and it became necessary to allude to the facts from which this difference arose in order to give the jury a practical, or working, idea of the principles of law called into play by this difference. We do not think the charge complained of did more than this. Indeed, we think that in its phraseology it was more favorable to the defendant Irvine than he could have required. The contention that according to the testimony of the railroad men, Irvine, as foreman, had no greater responsibility resting upon him than did the engineer, is not borne up by the testimony brought up by the bill.
Defendant excepted, also, to paragraph 14 of the charge as “misleading and not explaining the law of the case, and as an erroneous interpretation of the law of the ease.”
This objection is too vague and general to be of any service. An objection should be so framed as to enable the judge to correct his mistake if he has made one. No such opportunity is afforded when such a vague and general objection is made as the one we have here. We will add, however, that, when read in connection with the other parts of the charge, this particular paragraph means simply that gross and culpable negligence will supply intent; and is therefore good law and unobjectionable.
Defendant excepted also to paragraph 8 of the charge, as “not applicable to the facts of the case.”
We think the charge was eminently applicable.
The special charges which the defendant requested the judge to give the jury were as follows:
S-H ft d U aj ~ 'OD a ® A S3 . ■a 3 fj a p ca a S a ° o bln M-i o o .“>S a «3 3^8 4> % 3 °2 y-i’S ^ s a a . .So ants, or either of them, did so without intending to be disregardful of the danger which others might be placed in, or that they were not. indifferent to the danger which might result from the act, then it is your duty to find them, or the one to which this charge will apply, not guilty.
“(2) I charge you that, before you can find either of the defendants guilty, you must be convinced beyond a reasonable doubt from the-evidence adduced in this case that one acted in such a manner as to be indifferent to what might result from the act of going upon the track on which the collision occurred. Tou must be convinced that the wrong track was gone onto knowingly, and with indifference to-the danger which might ensue from the act. If the evidence does not support these conditions, it is your duty to bring in a verdict of not guilty.
“(3) I charge you that if you find by the evidence in this case that the defendant Irvine-was ignorant of his engine’s being on the wrong track, and that he was guilty of no gross negligence in being there, and had a good reason to believe that all was right, it is your duty to bring in a verdict of not guilty as to-him.
“(4) No one is responsible for death resulting from misadventure, even though he act with gross ignorance, and even if the act'is unlawful, though mistakingly believed to be innocent. Excusable homicide imports some fault, error, or-omission so trivial that the law excuses from punishment, but not from blame.
“(5) There can be no crime, large or small, without an evil mind. In other words, punishment is the sequence of wickedness, without which it cannot be. * * * It is therefore-a principle of our legal system that the essence of an offense is the wrongful intent, without which it cannot be.
“(6) I charge you, to render a person guilfiy of homicide because of the performance of a negligent act causing death, the negligent act must have been his personal act. So when a person charged with the performance of an ordinary duty cannot be held criminally responsible for negligent homicide, because death resulting-from a failure to perform, or an improper performance of such duty, where he has procured, a competent agent to perform such duty in good faith, and the negligence is that of the agent and not of himself, as in this -case, if you find from the evidence that the signal or order was given by a fellow workman with Irvine to go on the wrong track without Irvine’s knowledge, you should bring in a verdict of not guilty as to him.
“(7) To fasten criminal responsibility upon, a person for criminal negligence, causing the death of another, it is indispensable to prove-beyond a reasonable doubt that he omitted to do something which he ought to- have done, or that he did that which he should not have done,, in such a grossly negligent way that the law would impute to him the criminal intent which *445 Is the essential ingredient of crime. So, to render a person liable criminally for neglect of duty, there must be such a degree of culpability as to amount to reckless and negligent conduct.
“(8) I charge you that an exception to the rule that, if homicide results from negligence, it is manslaughter, exists, when the act resulting in death, although careless in itself was done under such circumstances that it could not reasonably be supposed that injury would follow.
“(9) I charge you that negligence, to be criminal, must be so great as to indicate on the part of the person guilty of it an indifference to the consequences which might result therefrom. I therefore charge you that it is not manslaughter where the act resulting in death, although careless in itself is the result of an honest mistake of judgment.
“(10) Mere negligence, with no intent to do harm, and under the belief that no harm was possible, but from which death results, does not render the negligent person criminally responsible therefor.
“(11) An act lawful in itself, when properly performed, may be performed so improperly (that is recklessly and wantonly) as to render it unlawful, and, in such case, if the death of another result directly and proximately therefrom, it is manslaughter; the wanton recklessness or gross negligence in such case supplying the place of a direct criminal intent. But inferences of guilt are not to be drawn from remote causes, and the law does not hold a person criminally responsible for slight negligence, nor for even a mere failure to observe ordinary care and diligence, but for only gross negligence, which alone supplies the place of the criminal intent.
“Negligence to be gross and criminal must be so grave as to indicate upon the part of the person guilty of it an indifference to the consequence which might result therefrom.
“The negligence must be gross and such as an ordinarily reasonable and prudent person (that is a person of ordinary discretion and judgment) might, and reasonably ought to, foresee and anticipate would endanger the lives and safety of others, and be likely to result in fatal injuries to others.”
All of these special charges, except the sixth, seventh, and ninth, are objectionable, in that they do not sufficiently take into account the fact that, if the special duty rested upon defendant as foreman to' see to it that the engine did not go upon this incoming track, his omission to perform that duty would constitute criminal negligence, making him liable, even though it was the result simply of inattention; and most of these charges present other objectionable features.
According to No. 1, the defendant could be guilty only if he had intended to be disregardful of, or indifferent to, the danger which might result from his taking his engine upon this incoming track. Intent is, of course, a necessary ingredient in crime; 'but to be unobjectionable the request should have gone on and explained that, while intent was necessary, the law would supply it from recklessness and culpable disregard of the safety of others.
According to charge No. 2, defendant can be guilty only if he went upon the track “knowingly and with indifference.” This means that defendant was relieved from the duty of using the precaution to learn whether or not the engine was on the right track. In other words, negligent acts of omission would not be punishable. According to that theory, a conductor or engineer who would take a trainload of human freight into an open drawbridge would not be criminally liable, provided he did not know it was open, although he knew the drawbridge was there, and that it was liable to 'be open.
According to charge No. 3, defendant is exculpated by his ignorance, even though he was charged with the special duty of being informed, and the safety of others depended directly and immediately upon his fulfilling that duty.
According to special charge No. 4, a person who brings about the death of another as the result of doing an unlawful act commits no crime, if he believes the unlawful act to be innocent. This assumes that one can be permitted to believe that an unlawful act is innocent; or, in other words, that one can plead ignorance of the law. The well-recognized rule is that the doer of an unlawful act is conclusively presumed to know the unlawfulness of the act, and that, if the death of a human being results from the intention *447 al doing of such unlawful act, it is either murder or manslaughter according to the circumstances of the case. Bishop, Crim. L. (8th Ed.) § 698 et seq.
The special request No. 5 in order to be unobjectionable, should have been qualified by adding that recklessness or gross culpable negligence may supply intent.
Charge No. 6 is good law, but inapplicable to the facts of the case, in that no one on the trial undertook to say that defendant had “procured an agent to perform the duty” which, as foreman, rested upon him. Defendant does not deny that he was foreman of the engine, and in the actual discharge of the duties of that office, when the engine went upon this wrong track. He does not pretend to say that he had abdicated for the time being his said office and transferred its functions to another. The only thing he says in that connection is that the engine’s having gone upon the wrong track was unknown to him until too late for the situation to bo mended.
Charge No. 7 is so worded as to be calculated to mislead the jury. It reads that:
“It is indispensable for the state to prove beyond a reasonable doubt that Irvine * * * did that which he should not have done in such a grossly negligent way that the law would impute to him criminal intent.”
This1 is open to the construction that, even if Irvine’s going upon this wrong track was culpable negligence, nevertheless he is not guilty if the manner of his doing it was not negligent; that is to say, if before venturing upon the track he looked carefully to make sure that it was free, and, after going upon it, he kept careful and sharp lookout. Moreover, if in going upon this track Irvine violated a rule of the company adopted for the safety of this incoming track — in other-words, failed in a plain duty involving directly the safety of others — his conduct in the premises, whether it was an act of omission, or commission, was criminal, irrespective of whether it was or not reckless.
The special request No. 8 was inapplicable to the facts of the case, because those in charge of this engine could not possibly suppose that injury would not follow their going upon this track when the very reason of their being forbidden to go upon it was that to do so would be too dangerous for the risk to be incurred. The charge is self-contradictory. It supposes that an act which because of its dangerous character constitutes carelessness and negligence may be done under circumstances excluding the idea of danger. In other words, that an act admittedly dangerous can reasonably be supposed not to be dangerous.
Special request No. 9 is the only part of the case that has caused us some hesitation. We have concluded to sustain the ruling of the trial judge, and our reasons are these. The defendant Irvine, in testifying for himself as a witness, did not claim that the engine’s going upon this wrong track was the result of an exercise of judgment on his part. On the contrary, he denied that he had any knowledge of the engine’s having gone on this wrong track until just before the collision. He was therefore in no position to request a charge to the effect that he is not guilty if the engine’s going upon this wrong track was the result of an error of judgment on his part. It is noteworthy that this special charge was prepared and presented by the attorney for the defendant Madox, and was merely joined in by the attorneys for Irvine; also, this charge may be said to be practically covered by paragraph 13 of the general charge.
Special request No. 10 is inapplicable to the facts of the case.
Special request No. 11, in so far as good law, is covered by the general charge.
Judgment affirmed.