torney, had become disqualified for the discharge of the functions of that office by having, after his election thereto, accepted the office of attorney for the village of Grand Coteau, and acted in that capacity. The motions were overruled, and no bills of exception were reserved; and, as the transcript contains no assignment of error, and there is no error patent upon its face, it presents nothing for this court to act on.

Judgment affirmed.

---

(64 South. 146.)

No. 19,848.

INGRAM et ux. v. KANSAS CITY, S. & G. RY. CO. et al.

(Jan. 5, 1914.)

*(Syllabus by the Court.)*

1. RAILROADS (§ 274*)—INJURY AT DEPOT—LIABILITY.

Every act of man that causes damages to another obliges him by whose fault it happened to repair it. Civ. Code, art. 2315.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 868–872; Dec. Dig. § 274.*]

2. RAILROADS (§ 273½*)—INJURY TO STRANGER—LIABILITY FOR NEGLIGENCE.

"We conceive the rule to be this: That, while a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts." Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745; Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434; Patterson's Railway Accident Law, § 187; Hamilton v. Railroad Co., 42 La. Ann. 824, 8 South. 586; State v. Irvine, 126 La. 434, 52 South. 567; McGuire v. Vicksburg, Shreveport & Pacific R. R. Co., 46 La. Ann. 1543, 16 South. 457; Lampkin v. McCormick, 105 La. 419, 29 South. 954, 83 Am. St. Rep. 245; Pierce on Railroads, 330; 1 Thompson on Negligence, 449.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 273½.*]

3. RAILROADS (§ 276*)—INJURY TO NEWSBOY—LIABILITY FOR NEGLIGENCE.

Where, according to a general custom, newsboys are permitted to go on street railway cars to sell and deliver papers, a boy is not a trespasser while on a car selling a paper, unless his right to remain on the car has been terminated by reasonable notice. Indianapolis Street Ry. Co. v. Hockett, 161 Ind. 196, 67 N. E. 106; International & G. N. Ry. Co. v. Kent (Tex. Civ. App.) 124 S. W. 179.

[Ed. Note.—For other cases, see Railroads, Cent Dig. §§ 878–886; Dec. Dig. § 276.*]

4. RAILROADS (§ 274*)—PERSONAL INJURY—DUTIES TO PUBLIC.

"To the public at large the (railroad) company owes nothing beyond the observance of the duties of good neighborhood, which includes the universal duty of doing no willful or wanton injury and of not erecting or continuing on or near its platform or approaches, to which the public may be expected to go, any nuisance, trap, or pitfall from which personal injury is likely to ensue." 2 Wood on Railroads (Minor's Ed.) § 310, p. 1345.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 868–872; Dec. Dig. § 274.*]

5. APPEAL AND ERROR (§ 273*)—OBJECTION BELOW—SUFFICIENCY.

It has been too frequently held to require the extended citation of cases that an exception of a general character will not cover specific objections, which in fairness to the court ought to have been called to its attention, in order that, if necessary, it could correct or modify them. In such cases it is the duty of the objecting party to point out specifically the part of the instructions regarded as erroneous. Baltimore & Potomac Railway Co. v. Mackey, 157 U. S. 72, 86, 15 Sup. Ct. 491, 39 L. Ed. 624; McDermott v. Severe, 202 U. S. 600, 610, 26 Sup. Ct. 709, 50 L. Ed. 1162.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1590, 1606, 1620–1623, 1625–1630, 1764; Dec. Dig. § 273.*]

6. APPEAL AND ERROR (§ 272*)—PRESENTATION BELOW—BILL OF EXCEPTIONS.

A bill of exceptions will be limited to the exceptions taken at the time of the delivery of the charge by the judge to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1611–1619; Dec. Dig. § 272.*]

*(Additional Syllabus by Editorial Staff.)*

7. RAILROADS (§ 274*)—"LICENSEE."

The term "licensee," as applied to a common carrier, relates more properly to persons entering by express or implied permission on depot grounds, or standing trains for purposes other than that of transportation, as news vendors to sell papers, persons receiving and parting with guests, or any one having business with the company. It would seem that no one can become such a licensee on premises of a railroad company, or on its train while standing at the station, without the consent of the company, either

express or implied (quoting Words and Phrases, vol. 5, p. 4143; see, also, vol. 8, p. 7706).

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 868–872; Dec. Dig. § 274.*]

Provosty, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; E. W. Sutherlin, Judge.

Action by W. T. Ingram and wife against the Kansas City, Shreveport & Gulf Railway Company and others. From judgment for plaintiffs, defendants appeal. Affirmed.

Alexander & Wilkinson, of Shreveport, and S. W. Moore, of Kansas City, Mo., for appellants. Blanchard & Smith and Thos. C. Barret, all of Shreveport, for appellees.

SOMMERVILLE, J. Plaintiffs, parents of a son named Clarence, aged 11 years, sue the defendants in the sum of $10,000 for damages to their deceased son and to them, alleged to have been caused by the fault and negligence of defendants.

Defendants answered, denying generally all the allegations in plaintiffs' petition, but admitted that the son of plaintiffs was injured at the time, place, and to the extent alleged, but averred that the same was without fault on their part. They did not allege contributory negligence; but they represented that the child had no right at the depot at the time he was killed, that he was a mere spectator, and that they owed him no duty whatever, except not to willfully and intentionally injure him. They further alleged that their engineer and employés did all they could do possible to avert the injury, and used all precaution in their power to prevent the accident.

There was judgment in favor of plaintiffs as prayed for; and defendants have appealed.

It appears from the evidence that on the morning of July 4, 1912, about the time the south-bound train of the Kansas City, Shreveport & Gulf Railway Company was due, the agent, or his assistant, in charge of the depot at Mooringsport, moved a truck, which was used for hauling baggage and mail bags, to a point on the platform which was considered by him to be clear of the incoming train.

Clarence Ingram was there engaged in selling newspapers. He had gone to the depot for that purpose and was standing on the open, gravel railroad platform, some 25 feet from the truck and the track. As the train came in, the engine and tender missed the truck; but the upright stanchions at the end of the truck were caught by the baggage car, pulled around and struck by the iron steps of that same car, and thrown or propelled some 25 feet through the air, striking Clarence Ingram, and inflicting injuries from which he died the same day.

Defendants, on their brief, say:

"The question is squarely presented: As a matter of law, what duty did the defendants owe him (the deceased boy) at the time of the injury?"

Defendants argue that, under the settled jurisprudence of the state, Clarence Ingram was a trespasser or licensee, and that they owed him no duty except not to willfully or wantonly injure him.

The depot at Mooringsport is shown by the record to be an open one; and the platform consists of gravel, made with a slight incline so as to drain properly. There was no attempt made to inclose same, or to keep strangers from congregating there. The evidence shows that, like in other country places, the people of the town regularly visited the depot at the time of the arrival and departure of trains. It further shows that Clarence Ingram was a newspaper boy, in the habit, to the knowledge of defendants' employés, of frequenting said depot for the purpose of getting his papers from passing trains and for selling his papers to patrons of the railroad, as well as to others assembled there. It further shows that he had never been warned to keep away from said depot.

[7] If we accept the definition given in

Words and Phrases for a "licensee," we would term the deceased boy a licensee. That definition is:

"The term 'licensee,' as applied to a common carrier, relates more properly to persons entering by express or implied permission on depot grounds or standing trains for purposes other than that of transportation, as news venders to sell papers, persons receiving and parting with guests, or any one having business with the company. It would seem that no one can become such a licensee on premises of a railroad company, or on its train while standing at the station, without the consent of the company, either express or implied"—citing authorities.

It was quite clear that the deceased was not a trespasser; he was there with express permission of the defendant; he was more than a licensee. It is a well-recognized fact that boys frequent railroad depots for the purpose of selling newspapers. It is a part of the life of a railroad depot; and they are looked for and expected by persons called there on business or for pleasure; and we may add that their presence is expected by the railroad companies themselves. Under the circumstances, with the depot unfenced and unguarded, with it having long been the place where people congregated generally on the arrival and departure of trains, with the knowledge on the part of defendants' employés that the deceased boy had been in the habit of frequenting the said depot for the purposes of getting his papers and of selling them to the people who were there congregated, and to those who came off the trains, and with no warning of any kind from the defendants to him to keep away from the said depot grounds, the deceased had a right to be where he was at the time that he was struck and met his death.

[1] The law of this state is that:

"Art. 2315. Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it."

That the accident to the deceased happened through the fault of the defendant is made clear by the evidence.

It was gross carelessness on the part of the assistant to the depot master to have placed the truck in such close proximity to the track as to permit it to be struck by any portion of the oncoming train. It was placed where it was for the purpose of being used in connection with that very train, and it should have been placed where it might have been used, and not where it was struck, and therefore could not be used. That it was not properly placed is evidenced by the fact that the train struck it and sent it flying through the air, a distance of some 25 feet, with great force, injuring a man in its flight and killing Clarence Ingram.

The evidence shows that there was neglect and fault on the part of the engineer in charge of the locomotive. He was running at the rate of eight or ten miles an hour, coming into a station, where he intended to stop, so that passengers might alight from and board the passenger coach. There was a slight curve in the track, after it left a trestle, some 400 feet from the depot; but it was not sufficient to obscure the track from the engineer.

The engineer testifies that he could see clearly for 300 feet, which would have been sufficient in which to have stopped the train, if he had seen that the truck was in too close proximity to the track. He testifies that he did not see the truck until he got within 150 feet of it, and that it was then too late to stop and avoid the collision. But the fact is he might have seen it. He says:

"I was not looking out for the truck especially. If I had, maybe when I came around the curve I could have stopped."

He says further:

"Well, I was looking ahead on the track. I was not noticing anything on the side of the track. * * * I was not looking out for it. I was looking down the track and was going to make the stop at the water tank. We generally make the stop there."

He further testifies that when he saw the truck he thought it was about one foot from the track, and that the train would have missed it. This was a serious mistake on his part, which does not excuse him or his employers. The conductor on the train took a position on the steps of one of the coaches, saw the truck, and was of a different opinion. He thought it would be struck by the train, and he was correct. This witness also testified that the cars overlapped the tracks about 2 feet 6 inches; and it was clearly the duty of the engineer to have known this fact, and to have also known that the truck would be struck by the train when he calculated that it was only one foot from the track.

The authorities relied upon by the defendants to the effect that a railway company is not liable to a licensee or trespasser for an existing defect in its premises have no application in this case. There were no existing defects in the platform of the depot of the defendant company, so far as this record shows; and the death of the child did not result from any such cause. But, it is argued, if a defect arises while a licensee is on the premises the same rules should prevail. The law is to the contrary.

[2] The Supreme Court of the United States in Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, say:

"We conceive the rule to be this: That, while a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts. * * * If from the evidence given it might justly be inferred by the jury that the defendant, in the construction, location, management, or condition of its machine, had omitted that care and attention to prevent the occurrence of accidents which prudent and careful men ordinarily bestow, the jury was at liberty to find for the plaintiff."

The jurors, men of the average of the community where the accident happened, comprised of men of education and men of little education, men of learning and men whose learning consists only in what they themselves have seen and heard, the merchant, the mechanic, the barber, the laborer, these sat together, consulted, applied their separate experiences of the affairs of life to the facts proven, and drew a unanimous conclusion that the defendant companies were negligent, and that the child's death was caused by their fault.

And in the case of Union Pacific Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, the Supreme Court say:

"The principles announced in Railroad Co. v. Stout, have been approved in many adjudged cases. * * * We adhere to the principles announced in Railroad Co. v. Stout, supra."

After reviewing the adjudged cases and observing that the question of negligence must depend upon the circumstances of each case, we can see no difference between an express license to the people of Mooringsport to visit the depot of defendants and an implied license, without objection or warning, to do so at will, for purposes of curiosity or pleasure, or other inoffensive and legitimate purposes.

We are of the opinion that Mr. Patterson, in his work on Railway Accident Law, § 187, correctly states the gist of opinions of the courts, and lays down the rule to be applied in this case:

"While licensees must take the railway's premises as they find them, and therefore cannot hold the railway liable for a failure of duty in not maintaining its premises in a condition of sound repair, yet the railway is bound as to such licensees to exercise ordinary care in the conduct of its business on the premises upon which it permits the licensees to come, and it is liable to them for injuries done to them by its want of such care. This distinction between what may be called active and passive negligence is well illustrated by the judgments of the Queen's Bench in Gallager v. Humphrey, 6 L. T. N. S. 684, where a warehouse owner was held liable to a licensee for injuries caused by the negligence of a servant in his lowering of a barrel from an upper story of the warehouse. Cockburn, C. J., puts the distinction

thus: 'I quite agree that a person, who merely gives permission to pass and repass along his close, is not bound to do more than to allow the enjoyment of such permissive right under the circumstances in which the way exists; that he is not bound, for instance, if the way passes along the side of a dangerous ditch, or along the edge of a precipice, to fence off the ditch or precipice. The grantee must use the premises as the thing exists. It is a different thing, however, where negligence on the part of the person thus having granted the permission is superadded. It cannot be that, having granted permission to use the way subject to existing dangers, he is to be allowed to do any further act to endanger the safety of the person using the way.' In the same case, Wightman, J., said: 'It appears to me that such permission as is here alleged may be subject to the qualification that the person giving it shall not be liable for injuries to persons using the way arising from the ordinary state of things, or of the ordinary nature of the business carried on, but it is distinguishable from the case of injuries wholly arising from the negligence of that person's servants.'

"Sec. 188. Upon this principle a railway has been held liable to licensees for injuries caused by the movement of trains by a flying switch. So, also, a railway has been held to be liable in damages for its negligence in leaving unattended the boiler of a steam pile driver, which exploded and injured one who was passing over a footway which, without objection from the railway, had been, for many years, used by the public. It may be therefore stated, as a general rule, that, where a railway permits persons to cross its lines or premises, it is bound, as to those persons, to exercise care in the operation of its line, and it cannot treat them as trespassers."

And in Hamilton v. Railroad Co., 42 La. Ann. 824, 8 South. 586, where a child was run over and killed on the tracks of the company, and the parents, suing, charged gross, wanton, and criminal negligence, we say that, while the negligence was not gross, wanton, or criminal, plaintiffs were nevertheless entitled to recover.

The same principles were applied in the criminal case of State v. Irvine, 126 La. 434, 52 South. 567. See, also, Lampkin v. McCormick, 105 La. 419, 29 South. 954, 83 Am. St. Rep. 245, where we say:

"We cannot deal with the accident under inquiry in this case from the standpoint of Lampkin's having occupied, when he was killed, the position of either a trespasser or licensee. * * *

134 LA.—13

"The important question is whether persons were accustomed, rightfully or wrongfully, as a fact, to congregate at this particular place, and by so doing made it a point of danger to life and limb."

And in the case of McGuire v. Vicksburg, Shreveport & Pacific Railway Co., 46 La. Ann. 1543, 16 South. 457, we say:

"On reason and authority the mere fact of trespassing on the tracks will not excuse a railroad company for destroying life. The obligation of reasonable care to avert such result still remains in the company." Pierce on Railroads, 330; 1 Thompson on Negligence, 449.

But we have seen that the deceased newsboy was not a trespasser or wrongdoer. He had been permitted by defendants to ply his vocation at this depot for some time, and he was rightfully there.

This view is sustained by a recent decision of the Supreme Court of Texas, where a hotel keeper, soliciting patronage for his hotel, as had been his custom, was injured at the depot through the fault of the railroad company's employés, who failed to use ordinary care to prevent injuring him. International & G. N. Ry. Co. v. Kent (Tex. Civ. App.) 124 S. W. 179.

To the same effect is a decision of the Supreme Court of Indiana in Indianapolis St. Ry. Co. v. Hockett, 161 Ind. 196, 67 N. E. 106, where the court say:

[3] "Where, according to a general custom, newsboys are permitted to go on street railway cars to sell and deliver papers, a boy is not a trespasser while on a car selling a paper, unless his right to remain on the car has been terminated by reasonable notice."

[4] These cases are under the rule laid down in 2 Wood on Railroads (Minor's Ed.) § 310, p. 1345, as follows:

"To the public at large the company owes nothing beyond the observance of the duties of good neighborhood, which includes the universal duty of doing no willful or wanton injury and of not erecting or continuing on or near its platform or approaches, to which the public may be expected to go, any nuisance, trap, or pitfall from which personal injury is likely to ensue."

The placing of the truck by one of defendants' employés so close to the track as to permit it to be struck by the approaching train was not ordinary care or diligence on the part of such employé. It proved to be a dangerous device, a trap, a snare, or pitfall, from which injury ensued to unoffending citizens when the truck was struck by the train. The placing of the truck in such position was gross negligence, almost willful in its nature.

In a bill of exceptions found in the record, taken to the charge of the trial judge, it is stated that the judge refused three special charges asked for by the defendants. The two last charges are amplifications of the first, and they are not in accord with the law as laid down in this opinion, with reference to the obligations of a railroad to licensees at a railroad station or depot; and they were therefore properly refused.

[5] Defendants asked in substance that the jury be charged that:

"If you find that the young boy in this case had no business to transact with the railway company at the time he went to its depot and was fatally injured, but was present for business of his own or out of idle curiosity, I charge you that he was a mere licensee to whom the railway company owed no duty except not to intentionally or willfully injure him."

The court had fully charged the jury as to the duty of a railroad company to a licensee, and the request for the special charges was properly refused.

But the requested charges are not properly before the court for review, as they were not formally presented and requested, and objections taken to the refusal of the court to charge the jury. They were handed to the judge prior to the time that he had given his charge to the jury, but they were not handed to opposite counsel; and the trial judge embodied them in his general charge in so far as he deemed them to be correct principles of law. The only objection made to the court's refusal to charge the jury in the language requested was as follows:

"Counsel for defendants except to the refusal of the court to give the three special charges requested by defendant, Nos. 1, 2 and 3."

"It has been too frequently held, to require the extended citation of cases, that an exception of this general character will not cover specific objections, which in fairness to the court ought to have been called to its attention, in order that, if necessary, it could correct or modify them. * * * In such cases it is the duty of the objecting party to point out specifically the part of the instructions regarded as erroneous. Baltimore & Potomac Railway Co. v. Mackey, 157 U. S. 72, 86 [15 Sup. Ct. 491, 39 L. Ed. 624]." McDermott v. Severe, 202 U. S. 600, 610, 26 Sup. Ct. 709, 713 (50 L. Ed. 1162).

[6] Defendants also excepted to portions of the judge's charge to the jury, which exceptions were taken down by a stenographer at the time that they were made; and they are in the transcript. When the bill of exceptions was tendered to the judge, those exceptions were amplified and changed, and the judge refused to sign the bill as presented, saying, in part:

"Whereupon later counsel presented the bill, * * * in which bill he embodied certain lengthy paragraphs of the charge and presents the same as the parts of the charge he had objected to at the finish of the delivery of the charge. To this objection is made by counsel for plaintiffs, and the court, in signing the bill, limits it to the matters and things objected to at the time the judge finished the charge, and to the manner and form in which the matters and things objected to were then presented. The bill is limited to the objections made at the time and to the way they were then made."

The limitation made by the judge was properly made; and it will be sustained.

The several exceptions taken to portions of the charge of the judge to the jury have been fully discussed in the course of this opinion; and the law as contained in the charge, when the charge is read in its entirety, is sustained.

It would be useless to enumerate those objections here.

The suit of plaintiffs is for the right of their deceased child for damages, which caused him pain and suffering, and which he might have recovered if he had lived, and

which right of action survived in their favor, and for damages to them as the parents of their son Clarence, on account of his death, and of their deprivation of his society and assistance, of the solace and comfort he was to them, and of his love and affection for them and their love for him.

The lower jaw of the boy was broken, as were his ribs; and his skull may have been fractured. He received serious internal injuries. He lived five hours after the accident, in a semiconscious condition, during which time he appeared to suffer greatly.

The parents have the right to recover for damages to their deceased son and for damages to themselves resulting from his death. The evidence shows the boy to have been manly, industrious, comforting to his parents, and with much promise of becoming a useful and helpful son and citizen.

The jury awarded these parents $10,000 as damages. The amount is excessive; and we shall reduce it, so as to have it conform to judgments in similar cases.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount to $6,000, with interest; and, as thus amended, it is affirmed, costs of appeal to be paid by plaintiffs.

PROVOSTY, J., dissents.