Statement of the Case.
MONROE, C. J.
Defendant prosecutes this appeal from a verdict and judgment in favor of plaintiff for $25,000, as damages for personal injuries sustained by her in consequence, as she alleges, of the negligence of defendant and its agents. Plaintiff has answered the appeal praying that the amount of the award be increased to $40,000.
The case as disclosed by the evidence is as follows:
Plaintiff, at the time of the occurrence out of which this litigation has arisen, was about 17 years old, and was living in the family of her brother, W. C. Allen, who was then employed by defendant as the pumper of its oil well, known as “Sulphur No. 1,” having previously, been employed, as one, of two, pumpers who operated two of defendant’s wells known as “Pompano,” for which service he had received $100 per month, but had paid to one Parsons $5 per month, rent, for a residence, containing two rooms, supplemented by a tent in which the family cooking was done. He was offered the position at Sulphur No. 1, with the same pay, and with the use, free of rent, of a residence belonging to defendant and containing two rooms of about the same size as those of the Parsons house, and, also, free gas for household use, and he accepted the offer.
His family, proper, consisted of his wife and two children; but, after they were moved to. Sulphur No. 1, his sister (plaintiff herein) accepted his invitation to become a member of it, and they found themselves cramped for space. Allen testifies that he complained to defendant’s foreman that they needed more room, but with no result.
The foreman, Batton, says in his testimony :
“I never promised him any more room. He asked for more lumber to build another room, as the lumber was there, and I told him it was satisfactory, and he' did brjild another room. I think he got some lumber off the lease. Q. You say that he did build another room on the house? A. Yes, sir; after he went there.”
As there was no attempt to contradict that statement, we take it to be true that Allen did build the additional room. However that may be, at the end of about six months, he concluded that his family needed bathing facilities, and, without the knowledge of defendant or any of its officers, he set up a bath tub in the engine room, which room was about 200 feet distant from the. residence, but more conveniently situated with reference to hot water. One side of the room, for a distance of, say, five feet from the wall, was occupied by some part of the pumping apparatus, spoken of as a “clutch,” also as a “pulley,” and there was left a space, measuring 6x9 feet, in which the bath tub was installed, and, in order to guard the bathers against the danger of being caught in the moving apparatus, Allen put up two planks, between it and the improvised bath room, to that extent dividing the engine room into two compartments, and opened the bath room to his family, including the plaintiff. He testifies that the two officers of the defendant with whom he had dealings became aware that the room was so used, and approved or acquiesced in it. They say that they saw the tub (which was a galvanized iron tub such as is ordinarily used for the washing of clothes, etc.) and supposed that he was, perhaps, using it to “wash up” in, upon leaving the engine room, but knew nothing of its use by other members of the family.
It appears that, on the night of Juñe 7, 1914, Allen found that the “clutch” was not working properly, and he devoted the night, or part of it, to its repair or adjustment, and, in order to do that work, he took down the two planks, 8 and 12 inches wide, respectively, and perhaps 9 feet long, which partially shielded the “clutch” from the bath *187 room, and also took up two of the planks constituting, in whole or in part, that portion of the floor of the bath room between the tub and the clutch. I-Ie finished the work in the morning, and went to his house, to bed, and to sleep, leaving the two shield or guard planks out of their positions and the two floor planks loose and unsecured. He was called to his dinner at 12 o’clock, and got up and ate it, and then returned to his bed. After the table had been cleared, plaintiff and another Sister (who was visiting the house) concluded to take a bath, and went together to the engine room for that purpose, and, their preparations having been made, plaintiff was on the side of the tub nearest the exposed clutch and the sister on the other side (the entire space between the clutch and the opposite wall being only six feet), when the loose planks under plaintiff’s feet slipped, ox, as she says, the floor gave way, and she was thrown against and caught in, or under, the clutch and terribly mangled; her injuries being such that it became necessary to amputate one of her legs, and that she was otherwise disabled.
Opinion.
The accident thus described was most deplorable, and the young girl (plaintiff), maimed for life, receives our sincere sympathy, as she, no doubt, received that of the jury and the judge before whom the case was tried; but we know of no principle of law, or of common justice, which sanctions the verdict and judgment appealed from, whereby this defendant is held responsible in damages for her great misfortune.
Defendant was engaged in a business enterpx-ise which required the use of certain machinery and appliances, and it established the necessary plant and placed it in charge of an experienced man, whose duty it was to operate it for the accomplishment of the purposes of that enterprise, and who was without authority, express or implied, to represent defendant in operating or making use of it for any other purposes. 1-Ie converted the engine room into a bath room, without the knowledge of defendant or any of its agents, for his own convenience and that of his family, and he in no wise represented the defendant in so doing. When he directed his sister to the apartment established and maintained by defendant for the housing and operation of its appliances, as a place in which she might bathe, his act was not the act of defendant and had no connection with its business or interests, but was his own act, beyond the scope of his employment as defendant’s servant, and uttexly beyond the limits of any authority conferred on him in that capacity; and, when plaintiff entered therein, she did so entirely for her own pleasure and convenience and with no object in view which bore any relation whatever to that business or those interests.
Plaintiff has endeavored to show that defendant’s foremen, Allen’s immediate superiors, knew, or were informed by him, at some time prior to the accident, that his family were using the engine room as a bath room; but the testimony to that effect is inconclusive. Even were it otherwise, however, there was no invitation, express or implied, from defendant to the family, to use the engine room for a purpose not contemplated by it, and plaintiff must be held to have done so as a mere licensee to whom defendant owed no duty with respect to the safety of the premises, save that it should not, knowingly, have allowed her to run upon a hidden peril or wantoxxly or willfully have caused her harm. Le Breton v. Kennedy, 27 La. Ann. 432; Gross v. Fischer, 119 La. 202, 43 South. 1006; Reary v. Ry. Co., 40 La. Ann. 32, 3 South. 390, 8 Am. St. Rep. 497; 26 Cyc. 1536; 29 Cyc. 449, 451; Cooley on Torts, vol. 2, p. 1267, § 271; Thompson on Negligence, § 946; Bell v. Houston & S. Ry. Co., 132 La. 88, 60 South. 1029, 43 L. R. A. (N. S.) *189 740; Ingram v. Kansas City S. & G. Ry. Co., 134 La. 378, 64 South. 146, 50 L. R. A. (N. S.) 688; Indian Refining Co. v. Mobley, 134 Ky. 822, 121 S. W. 657, 24 L. R. A. (N. S.) 497; Means v. So. Cal. Ry. Co., 1 Ann. Cas. 209, note.
Another view of the matter is that Allen was the head of the family, and, as it is clear that he would have had no right of action against defendant if the injuries described in the petition had been sustained by him, it may well be doubted whether any member of his family is in a better position. And still another view is that, with the removal of the planks which partially screened the clutch, the danger of interposing one’s person in a space (between the tub and the clutch), which could hardly have been more than 18 inches in width, must have been reasonably obvious. We do not, however, pass upon those questions, we find it sufficient for the purposes of the case that plaintiff, when injured, was, at most, a mere licensee upon defendant’s premises to whom defendant owed no duty, a failure in the discharge of which would result in the imposition upon it of the liability here sought to be enforced.
It is therefore ordered that the verdict and judgment appealed from be annulled and set aside, that plaintiff’s demand be rejected, and that this suit be dismissed, at her cost.