LAND, J.
This is a suit for damages for the death of the plaintiff’s minor son, Ed *791 winice Weekly, aged seven years and two months, who was killed by the falling of a gate, erected by the defendant company on its right of way near a crossing over its tracks. Plaintiff alleges negligence on the part of the defendant in failing to maintain and keep said gate in good repair, and more especially in continuing the use of a broken bolt or pin in the top of a post, which was badly decayed by the action of the weather, and worn by continued use and the play of the broken pin.
For answer, the defendant, after pleading the general issue, averred that the gate was properly constructed; that there were no apparent defects in the gate at the time of the accident, and there was nothing to indicate that the pin in the post was defective, faulty, or broken. Further answering, the defendant averred that the accident was caused by the fault, imprudence, carelessness, and negligence of the deceased by placing himself on said gate, and by swinging on the same, thereby causing it to shut with unnecessary force and violence, or by shutting said gate with unnecessary force and violence, thereby breaking said pin.
The case was tried before the judge below, who rendered judgment in favor of the defendant. Plaintiff has appealed.
There is no dispute about the fact that the boy was killed by the fall of the gate, as he' was shutting it. His neck was broken and his death was practically instantaneous.
The evidence shows that one Hector Foreman, with a vehicle, had just passed through the gate, leading his horse, and was about to turn back to shut the gate, when the boy offered to close it for him. Thereupon Foreman turned, and was getting into his vehicle, when he heard a “remarkable” noise, and looking back saw the gate and the boy falling together. This witness, before the trial, signed a statement, written by an employe of the defendant, to the effect that the boy swung on the gate. But' on the trial he testified that if the boy got on the gate he did not know it, as he was not looking in that direction at the time. As the witness’ attention was first attracted by the noise made by the falling of the gate, he could not have seen the boy swinging on the gate before it fell. There was no other witness present at the time of the accident.
There had been an old gate at the same place, and the gate in question was constructed and put in place on November 24, 1908. The accident occurred November 26, 1909. In the reconstruction of the new gate the section foreman used the posts of the old gate. Finding it impracticable to draw out the pivot bolt, or pin, on which the old gate had swung, the foreman cut it off at the surface of the post, and drove down the part remaining in the wood about 1 y2 inches. The foreman testified that the new pin was of wrought iron, and was apparently sound, as were also the posts and all the other material used in the construction of the new gate.
The broken pin and a section of the post were filed in evidence, and have come up as a part of the record. An inspection of these exhibits shows an irregular hole in the center of the post, about 1 y2 inches in width and depth, at the bottom of which appear the ends of the old and new pins. The break occurred at the junction point of the two pins, about 1 y2 inches below the surface of the post. It is an undisputed fact that the pin, prior to the date of the accident, had been cracked more than half through at the same point at which it finally broke. On the trial of the case, an official of the defendant, after examining the broken pin, testified that its appearance indicated a fresh break of one-third or one-fourth of an inch.
Several witnesses examined the post and pin shortly after the accident. Plaintiff testified that there was a little splinter of the *793 pin that had not been broken very long-two or three months — but the rest had been broken for a long time.
Another witness testified that he examined the pin carefully, and “it looked as if it was half broke and old,” and the rest of the break, looked “fresh.” The foreman examined the pin on the trial, and said that the break was one-half old and one-half new. This 'witness testified that the pin when driven in the post was “good,” and he did not observe any defect in it. Whether the pin was a new one does not appear from the evidence. An official of the defendant testified that he could not detect any defect in the material of the pin, and that all the clean fibers showed good metal. With no other evidence on the subject, it is manifest that the doctrine as to latent defects has no application to the facts of the case.
The witnesses for the defendant testified that,- before the accident to the boy, they had never heard of the breaking of the pivot pin of any similar gate. The assistant superintendent of defendant testified that such a pin will not rust sufficiently to break during the life of the gate; and that a wrought-iron pin must be repeatedly bent in the same place before it will break. The same witness testified that the weight of the boy in question, applied to the gate for one single time, would not break the bolt, but—
“if it had been repeated a sufficient number of times to cause a great number of bends in the bolt at the same point, it would have caused the final breaking of the bolt.”
The same witness testified that the tensile strength of the bolt or pin in question was 2,000 pounds, on the basis of safety, and the pin would in fact sustain a weight of 6 tons.
After a careful review of the evidence, we are convinced that the sudden falling of the gate, an unusual circumstance beyond the experience of any of the witnesses, can be explained only on the hypothesis of the use, in the beginning, of a defective pin, or of faulty construction, or of both combined. The pin of the first gate remained sound, and performed its function during the life of that structure. The pin of the last gate was first cracked, and then broken at the end of a year and two days. Such a result is not explainable on the theory of ordinary use, or even abuse, in the opening and shutting of the gate. No such result followed in the case of. the first gate. The construction was unusual, in that the new pin was driven in by the side of the old pin, in such manner as to leave 1% inches of the former without support of any kind. It is significant that the crack and break in the new pin was at the point of its contact with the old pin. As a wrought-iron pin must be often bent before it can be broken, it is evident that in the operation of the gate the pressure was at the point of contact.
We therefore conclude that the'defendant was negligent in using a defective pin, or in faulty construction, or in both.
The law of master and servant is not applicable to this case, which is governed by the rule that the master is liable to third persons for injuries occasioned by the negligence of his servants.
Instead of furnishing the usual fencing and cattle guard at the crossing, the defendant elected to substitute a gate on its right of way. The gate was for the use of plaintiff and others, and the defendant was as much bound to maintain the gate in safe condition as it was the railroad crossing.
As to the quantum of damages, we will follow the precedent in Buechner v. City of New Orleans, 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455, and Cherry v. Louisiana & Arkansas Ry. Co., 121 La. 471, 46 South. 596, 17 L. R. A. (N. S.) 505, 126 Am. St. Rep. 323.
It is therefore ordered that the judgment below be reversed, and it is now ordered *795 that the plaintiff, Alexander Weekly, do have and recover of the defendant, the Louisiana Western Railroad Company, the sum of $6,-000, with legal interest thereon from date of the filing of this decree, and costs in both courts.