## LEVY v. McWILLIAMS ET AL.

(April 21, 1930. Opinion and Decree.)
(June 2, 1930. Opinion and Decree on Rehearing.)

Anna Judge Veters, of New Orleans, attorney for plaintiff, appellant.

F. Rivers Richardson, of New Orleans, attorney for defendants, appellees.

JANVIER, J. Plaintiff, Levy, is the owner of a tract of land facing the Mississippi Sound at Waveland, Miss. Defendant Mrs. McWilliams is also the owner of a tract commencing 100 feet to the westward of Levy's property, and separated from it by a 100-foot strip of land owned by one Weston.

Levy, desiring to improve his property, planted thereon trees and ornamental shrubbery of various kinds. Defendant McWilliams, in order to clear his wife's property of stumps and to prepare it for use, made a written contract with C. B. Wells, under which Wells undertook to clear the stumps and to plow the ground.

Among other things, the contract provided for "blowing all the large stumps and grubbing out the small stumps."

Instead of blowing up the large stumps, of which there were two, Wells, the contractor, piled around them all the young trees and underbrush which he had cut down, and then undertook to burn the whole.

These fires burned for several days and thereafter there resulted, either from them or from another fire started by one Bourgeois, a conflagration which did considerable damage to other trees and shrubbery, burned two houses, and finally destroyed trees and ornamental shrubbery of plaintiff, Levy.

It is for the recovery of the replacement value of the property destroyed that this suit is brought. Actual damage of $450 is claimed, and Levy also seeks to recover $150 as a penalty in accordance with section 4988 of the Mississippi Code of 1906, which, it is alleged, reads as follows:

"If any person shall set on fire any lands of another, or shall wantonly, negligently, or carelessly allow any fire to get into the lands of another, he shall be liable to the person injured thereby, not only for the injury to or destruction of buildings, fences, and the like, but for the burning and injury of trees, timber, and grass, and damage to the range as well; and shall moreover be liable to a penalty of one hundred and fifty dollars in favor of the owner."

The defenses are, first, that the fire which caused plaintiff's damage was not the result or the outgrowth of that which was started by Wells, and, second, that Wells was an independent contractor and that, since defendants in no way controlled his method of operation and did not contemplate and had no reason to contemplate that he would use fire, they were not responsible.

We find the evidence as to whether the fire started by Wells was the source of the conflagration which destroyed Levy's trees is rather conflicting, but as we believe that, regardless of where the destructive fire originated, defendants are not liable therefor, we find it unnecessary to come to a conclusion on this question of fact.

The record shows that all the parties lived in New Orleans, and that no one of them was present when the fire started, nor thereafter, until after the entire damage had been sustained.

The contract did not contemplate that fire would be resorted to, and therefore it cannot be said that defendants authorized its use, and the record convinces us that they did not know that Wells intended to employ that means of removing the stumps and debris.

The opinion of the district judge on the question of the liability of Mrs. McWilliams, as the owner of the property, and on the liability of Mr. McWilliams, as the agent for his wife, is so well expressed that we have decided to adopt it:

"This contract made with Wells, required Wells to blow up those two large stumps, grub out the small stumps, clear the land of under-growth and plow it up. Therefore, when Wells went on that property and undertook to build a fire and burn up his trash and debris, it was the act of Wells, individually and as an independent contractor and in no way was he acting as the agent, servant or employee of the defendant. If a tort was committed, Wells committed it and the fact that he committed a tort on the defendant's property, in no manner makes the defendants liable, any more than should some one set my house afire, causing the loss of my neighbor's house and they could not hold me whether that man was a trespasser or an independ-

ent contractor building the house for me and I am not responsible for his act.

"It is true the law of Louisiana makes every one responsible for the damage caused by the defects of his house or building or the inherent vices in a building which cause damage to another. There is no such case here at all. There was no damage done by the defendant's property and the best that can be made of it is, the damage was caused by a fire started on defendant's property by an independent contractor, who was under no contract to build a fire. On the contrary, the contract called for another method of accomplishing the work."

In Muldry vs. Fromherz, 142 La. 1087, 78 So. 126, we find in the syllabus written by the court the following:

"Where one enters into a contract whereby the other contracting party agrees to haul away the debris of a demolished building at a fixed price per load, and neither reserves nor exercises any right of direction or control as to the labor or means to be employed, or the manner in which the work is to be executed, the second party is an independent contractor, and it is he, and not the first party, who is liable in damages for an injury sustained by a third person, through the fault of one of his employees in the reckless driving of one of his wagons."

See, also, La Groue et ux. vs. City of New Orleans et al., 114 La. 253, 38 So. 160, in which is found:

"Where the city of New Orleans, through a board of commissioners, made a contract with an arboriculturist for the furnishing and planting of a large number of trees upon the neutral ground in St. Charles avenue, the city having no choice in the selection of workmen and no control over the manner of doing the work, and where the work of planting the trees did not necessarily constitute an obstruction or defect in the street, rendering it unsafe or dangerous for the purpose of public travel, held, that the city is not liable with the contractor for personal injuries occasioned by plaintiff falling at night into one of the holes carelessly left open by the contractor."

We find that defendants did not retain the right to supervise the work of Wells, nor to direct him in carrying it out. No doubt they could have prevented him from using fire in the removal of the stumps had they known that he intended to do so, but they certainly had no knowledge of this intention, and the contract provided for a different method of operation.

It would be to abolish entirely the defense of "independent contractors" to say that the contractee is liable for every negligent act of the contractor, because he could have remained on the work and could have objected to the use by the contractor of dangerous appliances or methods of operation. In the absence of knowledge, the contractee may assume that a responsible, reputable contractor will employ only safe appliances and will follow only safe and approved methods of operation.

There is also involved in this case the question of the liability of plaintiff for fees of certain experts, and for expense incurred by them in attending court. On a rule to tax these costs judgment was rendered against plaintiff, and he was condemned in the sum of $117.98, itemized as follows:

| | | |
|---|---|---|
| W. W. Stockstill, Miss. Attorney, charge for Testimony given ............................. | $50.00 | |
| Expense attending Court 2 days .......................................... | 7.52 | |
| | | $ 57.52 |
| George Tirado, expert photographer, charge for testimony given ....................................... | 10.00 | |
| Expense attending Court 2 days ................................................ | 9.76 | |
| | | 19.76 |
| E. S. Drake, surveyor and timber expert, his charge for Testimony given ..................... | 30.00 | |

Expense attending Court 2
days _____ 7.40
_____
37.40

114.68
Court Docket Costs_____ 3.30

$117.98

The question involved is whether or not one party has the right to employ experts without the authority of court, and to then contend that the costs and fees of these experts should be taxed against the other party. We have been cited many authorities, none of which appears to be applicable, since, in the instant case, as we have stated, the so-called experts were all selected by the defendant, without any order or appointment from the district judge, and the article of the Code of Practice which authorizes the taxing of the fees of experts does not, in our judgment, warrant the charging of these fees against the other party unless the experts have been appointed by the district judge for his benefit or assistance. Article 552 of the Code of Practice states that the costs which may be taxed may also include "compensation allowed for their services to such experts, auditors, or judicial arbitrators, as may have been appointed in the suit." We have been shown no authority to the effect that the appointment which is referred to in the article may be made by the parties themselves, or by their attorneys. We therefore think that the court was in error in taxing as costs the items referred to.

It is therefore ordered, adjudged, and decreed that the judgment rendered on June 28, 1928, be, and it is, affirmed, and

It is further ordered, adjudged, and decreed that the judgment rendered on November 2, 1928, taxing as costs items totaling $117.98 be, and it is, annulled, avoided, and reversed, and that the rule to tax as costs the items mentioned be, and it is, dismissed. All costs except those referred to be paid by plaintiff.

Judgment on main demand affirmed.

Judgment on rule to tax costs reversed.

ON REHEARING

In the original opinion rendered herein we expressed the view that, since the so-called expert witnesses had not been appointed by the court, but had been placed on the stand as witnesses for one of the parties, their fees and expenses should be paid by the party who summoned them and should not be taxed as costs of court. We find, however, that under Act 19 of 1884, as interpreted by the Supreme Court in Suthon vs. Laws, 132 La. 207, the fees and expenses of experts may be taxed as costs even though the experts are not appointed by the court, but are summoned as witnesses by one of the parties. In that case the court said:

"The contention made by the learned counsel of Laws is that these engineers do not come within the intendment of this act because they were not appointed by the court as experts and were not summoned as experts, but were summoned as ordinary witnesses.

"We do not think that, under this act, it is necessary that the witnesses should have been appointed by the court as experts, or should have been summoned as such. It suffices under the terms of the act that they should have been called to testify only to an opinion, or to the result of scientific or professional examination."

It is very evident, however, that the right of a party to summon so-called experts and to tax as costs their fees and expenses should be supervised most carefully, and that such fees and expenses

should be taxed as costs only where it is manifest that the testimony of the witnesses is in reality necessary as elucidating some technical or scientific subject, and that, where the witness is not in reality placed on the stand to give such information, but is, in fact, called to testify as to facts of the case, the fees and expenses of such witnesses should be paid by the party who summons them. The case relied upon by defendant, Suthon vs. Laws, supra, is authority for this view.

Of the so-called expert witnesses who appeared in this case, only one, W. W. Stockstill, seems to have been really. necessary for the assistance of the court. The others, as we view their testimony, were in reality placed on the stand primarily to prove facts and not to give expert evidence.

We are very hesitant to allow the taxing as costs even of the fees and expenses of Mr. Stockstill · because, though he gave expert testimony with reference to Mississippi jurisprudence and regarding certain Mississippi laws, he admitted that he had been "employed to furnish the Mississippi law and help prepare the case"; in other words, that he had been employed by the defendant as an attorney.

Nevertheless his testimony was limited to matters of Mississippi law . and he did not testify to facts, and we have concluded that his fees, amounting to $50.00, and his expenses, amounting to $7.52, should be taxed as costs. The docket charge of $3.30 should have been taxed as costs also.

It is therefore ordered, adjudged, and decreed that our original decree be and it is amended by allowing and taxing as costs the fees and expenses of W. W. Stockstill, amounting to $57.52, and the docket charge of $3.30. As thus amended our original decree is reinstated.