**DINET et al. v. ORLEANS DREDGING CO., Inc., et al.** *

No. 14475.

Court of Appeal of Louisiana. Orleans.
June 29, 1933.

*Rehearing denied October 16, 1933.

Henry & Cooper and A. M. Suthon, all of New Orleans, for appellants Raymond Concrete Pile Co., Inc. and American Mutual Liability Ins. Co.

Deutsch & Kerrigan & Burke, of New Orleans, for appellant Orleans Dredging Co.

Alvin R. Christovich and Frank T. Doyle, both of New Orleans, for appellant Union Indemnity Co.

Lewis R. Graham and Harry R. Cabral, both of New Orleans, for appellees.

Milling, Godchaux, Saal & Milling and Lawrence K. Benson, all of New Orleans, amici curiæ.

HIGGINS, Judge.

Plaintiffs bring this suit for damages against the defendants, Orleans Dredging Company, Inc., its insurance carrier, Union Indemnity Company, Raymond Concrete Pile Company, and its insurance carrier, American Mutual Liability Insurance Company, in solido, for the death of their minor son, who was drowned in a pit alleged to have been dug by the defendants on the shore of Lake Pontchartrain, at Spanish Fort, this city.

The insurance carriers of the respective companies were sued direct under and by virtue of the provisions of Act No. 55 of 1930.

The charges of negligence against the defendants are that their agents and employees dug a large and deep trench on the shore of Lake Pontchartrain adjacent to a sea wall which the said defendants were constructing, within 50 feet of a public bathing beach, and failed to place any signs giving warning to bathers of the presence of the pit, or deep water.

The defendants denied liability, the dredging company claiming that the pit was dug by the agents of the Raymond Concrete Pile Company as an independent contractor, and therefore it was not responsible for the tort, the pile company contending that the excavation was made by the employees of the dredging company, for whose acts it was not responsible, and all of the defendants pleaded contributory negligence.

The jury rendered a verdict in favor of the plaintiffs and against all the defendants, in solido, for the sum of $10,000, and the trial judge refused a new trial. Defendants have appealed. Plaintiffs have answered the appeals and asked that the award be increased to the sum of $15,000.

The Union Indemnity Company went into the hands of a receiver and upon proper motion and order the receiver was made a party to the suit.

The record shows that the Board of Levee Commissioners of the Orleans Levee District, generally referred to as the Orleans Levee Board, entered into a written contract with the Orleans Dredging Company, Inc., for the purpose of having a sea wall constructed along the shore of Lake Pontchartrain; that the dredging company contracted in writing with the Raymond Concrete Pile Company to drive the piling and do the concrete work in connection with the project; that about three weeks prior to the time of the accident Mr. McGraw, the superintendent for the pile company, needed some filling upon which to rest the pile driver in order to properly operate it and ordered a dredging machine of the dredging company to excavate earth for that purpose; that he designated the place where the filling was to be taken from and the amount of it; that the trench was about 200 feet long, 25 feet wide, and 5 to 7 feet deep, and was situated on the eastern side of a pier which extended out into the lake and began at a distance of 40 or 50 feet therefrom, and 30 feet from the concrete base of the sea wall; that west of the pier is a public bathing beach which is operated by the Pontchartrain Beach Company under a lease with the Orleans Levee Board; that the water on both sides of the pier was shallow for several hundred feet out in the lake, except at the place where the pit was dug; that people bathed and waded on both sides of the pier; that when the tide came in on several occasions prior to the time of the accident, the waters completely covered the shore and obliterated any view of the trench; that there was neither any guard stationed, nor signs posted to warn bathers of the presence of the pit; that on Sunday, May 31, 1931, about 4 o'clock p. m., the plaintiffs' son, age 14 years, while bathing with several companions, came toward shore on the eastern side of the pier, or the side where the pit was located, and, due to the fact that the tide was in, the shore and the pit were completely covered by water; that the water near the shore was muddy due to the wave-wash, so that one walking along the shore could not see the pit; that the plaintiffs' minor son and another companion, who were unable to swim, walked into the pit and were drowned; that another boy with them, who could swim, also stepped into the trench, but swam out safely; that after the fatal accident no effort was made to post any notice of warning to those using the beach and four other persons walked into the trench, but, fortunately, were rescued; and that it was only after these last occurrences that a guard was placed on duty and danger signs posted.

Mr. Davy, the Orleans Levee Board engineer, testified that the beach of Lake Pontchartrain, beginning at Bayou St. John and continuing 2,500 feet west, was leased to the

Pontchartrain Beach Company, which was engaged in the business of operating a public bathing place. The pit, therefore, was dug in a part of the beach which was under lease to the Pontchartrain Beach Company. Mr. Davy's testimony also establishes the fact that the bathing concession was in actual operation by the lessee and neither the levee board, nor the lessee, placed any restrictions upon using the beach east of the pier. He also states that while the greater part of the crowd of bathers confine themselves to the west of the pier, no attempt was made to prevent persons from wading or swimming on the east side of the pier.

We experience little difficulty in arriving at the conclusion that those who dug the pit were guilty of negligence in digging it adjacent to a public bathing beach and leaving it remain in both an unguarded and unprotected condition, and without giving the bathers any warning whatsoever of the presence of this hazard, particularly when the workmen and the officers of both defendant companies knew that bathers and waders used the beach on both sides of the pier. R. C. C. arts. 451, 452, 2315, 2316 and 2317; Nemet v. City of Kenosha, 169 Wis. 379, 172 N. W. 711; Zeller v. Southern Yacht Club, 34 La. Ann. 838; Burns v. Crescent Gun & Rod Club, 116 La. 1038, 1043, 41 So. 249; Allen v. Atlas Oil Co., 140 La. 184, 72 So. 919; 45 Corp. Jur., 201.

The plea of contributory negligence is predicated on the ground that the boy elected to come in on the east or dangerous side of the pier, rather than on the west or safe side thereof; that as he did not know how to swim he should have explored to determine the depth of the water in which he was walking; that the presence of the machinery on the shore behind the sea wall was an indication that the beach at that point was not to be used by bathers; and that he was negligent in running and playing in the water when he could not see the bottom on account of the muddy condition of the water due to the wash of the waves on the shore.

The evidence convinces us that the east side of the pier was just as safe for bathers as the west side, the only exception being the pit in question. As the trench was closer to shore than the shallow water in which the boys had been playing and wading, no one would presume that there would be a sudden step-off into deep water adjacent to the sea wall, or closer to shore, particularly where there was no notice or warning given of this unusual condition. Certainly the machinery located on the shore was no indication of any hidden danger. The cloudy condition of the water prevented the boy from seeing the pit, and we feel that he had a right to assume that the water would continue shallow to the shore line, since there was no warning to the contrary. The plea of contributory negligence is overruled.

In view of the above conclusions that it was negligence to dig the pit and leave it unprotected and without warning notices of its presence and that the boy was not guilty of contributory negligence, it follows that either the dredging company or the pile company, or both of them, are liable.

The plaintiffs contend that these companies are joint tort-feasors and are, therefore, liable in solido, the dredging company on the theory that the principal is responsible to a third person for the tortious acts of his servant, and the pile company on the ground that an agent is liable to a third person for his own tort, citing Jones v. Maestri, 170 La. 290, 127 So. 631; Sutton v. Champagne, 141 La. 469, 75 So. 209; Burke v. Werlein, 143 La. 788, 79 So. 405.

Counsel for the dredging company argue that the pile company was an independent contractor and, therefore, the general contractor is not responsible to third parties for the negligent act of the independent contractor, referring us to the following cases: Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L. R. A. (N. S.) 632; Cole v. Louisiana Gas Co., 121 La. 771, 46 So. 801; Lutenbacher v. Mitchell-Borne Const. Co., 136 La. 805, 67 So. 888, 19 A. L. R. 206; Bell v. Albert Hanson Lumber Co., 151 La. 824, 92 So. 350; Peyton v. Richards, 11 La. Ann. 62; Gallagher v. S. W. Exposition Ass'n, 28 La. Ann. 943; Riley v. State Line S. S. Co., 29 La. Ann. 791, 29 Am. Rep. 249; Giacona v. Orleans Ice Mfg. Co., 5 La. App. 259; Levy v. McWilliams, 13 La. App. 444, 127 So. 761, 129 So. 170.

The pile company takes the position that it was the agent of the dredging company under a written contract whereby it was obligated to do only the concrete and piling work and not the dredging work, and that the excavation in question was done by the employees of the dredging company.

Was the pile company an independent contractor, or the agent of the dredging company? The written contract between the Orleans Levee Board and the dredging company provided that no part of the work was to be given or assigned to subcontractors without the consent of the levee board. There is no proof in the record that the dredging company assigned any part of the work to the pile company and that the levee board consented thereto.

The agreement between the two defendants is in the form of a letter written by the pile company to the dredging company on June 18, 1930, and reads in part as follows:

"We hereby propose to construct for you as your agent, and subject to your direction, the work included in your contract," etc.

It is further stated in the letter that the pile company, "acting as your agent, shall rent all tools." We also find this statement in the agreement:

"You (the Dredging Company) will pay the entire cost of the work and will also pay us (the Pile Company) as compensation a fee of $85,000.00."

Mr. Davy, the engineer for the levee board, in testifying said: "The work was done by the Raymond Pile Company as agent for the Orleans Dredging Company."

Mr. Duease, secretary and treasurer of the dredging company, testified that "the Raymond Pile Company was doing that work as our agent."

Mr. McGraw, superintendent for the pile company, who was in active charge of the concrete and piling construction, testified: "We had a contract with the Orleans Dredging Company to do certain work as their agent."

The record shows that the dredging company was equipped to do the dredging work, but not concrete and piling work, and, therefore, had to make provision for carrying out that part of its contract with the levee board, which required the piling and concrete construction. In executing the agreement the pile company brought its experienced workmen and placed them on the job, but billed their salaries, as well as the wages of the men hired to do the work, to the job, and they were paid by the dredging company.

The evidence also shows that Mr. McGraw, having determined that he needed certain filling for the purpose of properly placing the pile drivers, ordered the dragline excavator of the dredging company, which was manned by the employees of the dredging company, to make the excavation in question. He specified the place where the trench should be dug, the amount of filling needed, and the place where it was to be put.

The materials which were used in the construction of the pile and concrete work were purchased on the recommendation of the officers of the pile company and charged to the account of the dredging company.

Counsel for the dredging company, in an elaborate and well-prepared brief, in attempting to sustain their position that there was the relation of independent contractor between the two companies, emphasize certain provisions in the contract and the conduct of the parties in carrying it out. For instance, the stipulation for the bonus for the speedy completion of the work and a lump sum for performing it; the fact that the pile company used its own employees and supervised the work, and furnished a large part of the necessary machinery.

■ A careful review of the record shows that there is abundant testimony supporting the conclusion of the trial court that there was the relation of master and servant, since the form of the contract, its verbiage, the interpretation placed upon it by all parties concerned, and the manner in which they proceeded to carry it out, show that the pile company was acting as the agent of the dredging company.

After this case was submitted, amici curiæ filed a brief raising the issue that the boy was a trespasser. The theory advanced is that the constitutional amendments contained in Acts No. 106 of 1922, No. 292 of 1928, and Act No. 4 of the Extra Session of 1930 in effect repealed, as far as the shores of Lake Pontchartrain are concerned, the provisions of articles 451 and 452 of the Rev. Civ. Code, which gave the public the right to use the shores of the lake for bathing and wading purposes, by placing exclusive jurisdiction and control thereof with the Board of Levee Commissioners of the Orleans Levee District (or Orleans Levee Board), citing Act No. 258 of 1910; State ex rel. Saint, Atty.-Gen., v. Timothy, 166 La. 738, 117 So. 812; Board of Levee Comm. v. Whitney Bank, 171 La. 38, 129 So. 658; New Orleans Land Co. v. Board of Levee Comm., 171 La. 718, 132 So. 121.

Counsel for plaintiff challenge the right of the amici curiæ to raise on appeal a new issue which was not raised by the parties litigant either in the lower court or this court.

Conceding that the pleadings did raise this issue, it is sufficient to say that the issue was never argued before this court and was expressly abandoned in the joint brief filed on behalf of all defendants, in which appears the following language:

"It is not our contention that they were trespassers and we are willing to admit that they were in these waters as licensees."

■ Since the question now presented was not raised by the parties to the litigation, it should not now be considered by this court. New Orleans Land Co. v. Board of Levee Comm., supra; Quaker Realty Co. v. Maierwatt Realty Co., 134 La. 1030, 64 So. 897; Clarke Co. v. Petivan, 161 La. 1095, 109 So. 913; Chopin v. New Orleans, 8 La. App. 152; Louisiana Digest, verbo "Appeal," § 95.

■ On the question of quantum the evidence shows that the deceased was born on April 12, 1917; that he lived with his parents and contributed $5 a week toward the maintenance of them; that he was in good health and was an affectionate son, being the eldest child, and that he attended school part of the day and on afternoons and Saturdays and holidays sold newspapers. The jury awarded the parents $10,000. Defendants contend that the amount is excessive and plaintiffs argue that it is inadequate.

It is difficult to fix the amount to be award-

ed in these cases because there are so many factors that have to be taken into consideration. We have been favored with a great number of authorities involving similar cases and, after having given full consideration to them, we believe that the sum of $8,000 would be fair and in keeping with previous awards. Rousseau v. Texas & Pac. et al., 4 La. App. 691; Simmons v. Doullut & Ewin Co. (La. App.) 145 So. 708; Bosarge v. Spiess & Co. (La. App.) 145 So. 21; McConnell v. Stellwagon (La. App.) 140 So. 138; Vincent v. M. L. & T. R. & S. S. Co., 140 La. 1027, 74 So. 541; Weekly v. La. Western R. Co., 129 La. 791, 56 So. 889, Ann. Cas. 1913B, 798; LeBlanc v. Sweet, 107 La. 355, 31 So. 766, 90 Am. St. Rep. 303; Buechner v. New Orleans, 112 La. 599, 36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455; Wharton & Stilles Medical Jurisp. Vol. III, p. 348.

For the reasons assigned the judgment appealed from is amended by reducing the amount awarded from $10,000 to $8,000, and, as thus amended, it is affirmed.

Amended and affirmed.

