234 F.2d 425
 The FIDELITY & CASUALTY COMPANY OF NEW YORK and Houston Fire
& Casualty Insurance Company, Appellants, Mr. and Mrs.
Seraphin TALBOT, Mr. and Mrs. Ellie Boudreaux, and Mr. and
Mrs. Dalfay J. Cavalier, Appellees.
 No. 15888.
 United States Court of Appeals Fifth Circuit.
 June 8, 1956.
 
 Alvin R. Christovich, P. A. Bienvenu, Bienvenu & Culver, New Orleans, La., Christovich & Kearney, and A. R. Christovich, Jr., New Orleans, La., of counsel, for appellants.
 William A. Porteous, Jr., Porteous & Johnson, New Orleans, La., for appellees.
 Before RIVES, TUTTLE and JONES, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 These are appeals from a verdict and judgments finding the driver of a school bus and the driver of a truck owned by the Lamar Advertising Co. guilty of concurrent negligence in an accident in which three high school students were killed. The appellants, insurers of the advertising company and of the school board, were sued under the Louisiana Direct Action Statute, LSA-R.S. 22:655, by the parents of each of the deceased, and the jury fixed the damages in each case at $25,000, plus medical and funeral expenses. Both appellants urge that the negligence was wholly that of the other driver and that the damages are excessive; in addition, the school board's insurer asserts error in the admission of certain evidence and in the trial court's charge that the school bus driver was required to use the highest degree of care.
 
 
 2
 The accident occurred at about 3:30 P.M. on October 6, 1954, when the school bus was being used to bring a capacity load of children home from Assumption Parish High School in Napoleonville, Louisiana, and the company's laborers were returning in the truck from Houma, Louisiana, where they had erected a signboard. The day was clear and sunny, and highway conditions were good. Each driver testified that as the vehicles approached each other at one end of a gradual curve, the other vehicle was over the center line, and that he thought that the other driver would steer to his own side of the road; however, too late to avert a collision, the other driver failed to do so, and the vehicles met as the stake body of the truck gouged out the side of the bus behind the first seat. Neither driver was alleged to have been speeding, and the only acts of negligence specified in the complaint were that neither was on his own side of the road, or pulled to his right when danger became obvious, or even sounded his horn.
 
 
 3
 August Babin, the bus driver, testified that he first observed the truck when it was about three-quarters of a mile away, it then being on the proper side of the road. When it was about seventy-five feet away, however, it began to cross over the center line. Babin thought that it would pull over again, but it continued on in this manner until it was only thirty-five feet away. At that juncture it was too late for him to do anything, and although by this time he had slowed down slightly, he did not attempt to pull over or blow his horn.
 
 
 4
 Hayes Gray, the truck driver, testified that he first saw the bus when it was 300 or 400 feet away. When it got within 100 feet of him he saw it running on the line, and when it continued to crowd him he pulled sharply to the right-- as the bus was about thirty or forty feet away-- but either just before or just after his truck went on the shoulder the impact occurred. The testimony of each driver was in general substantiated by the occupants of his vehicle, in Babin's case by several student passengers and in Gray's by his foreman, who was riding in the cab, and by three co-workers, who were in the back of the truck.
 
 
 5
 The plaintiffs alleged in their complaint and successfully argued to the jury that the accident was caused by the momentary inattention of both drivers. On appeal, each insurer asserts error in the court's overruling a motion for a directed verdict in its favor. In order to demonstrate that the great weight of the evidence is on its side, however, each begins by discounting much of the other's evidence as highly improbable. There were, to be sure, many contradictions in the evidence on both sides, but the credibility of witnesses is typically a question for the jury's consideration, and the testimony on neither side was so inconsistent or improbable as to require its rejection in whole by the fact-finder. Moreover, the record does not disclose a theory of the event so clearly valid that all reasonable minds must accept it.
 
 
 6
 In the alternative, the school board's insurer contends that the only question in the case is which vehicle was on the wrong side of the road. Thus, it argues, since either the bus driver or the truck driver was over the center line, a new trial should be granted so that the liability can be determined with regard to which driver it was whose negligence proximately caused the accident. In support of this argument, several cases are cited wherein it was held that there is no concurrent negligence on the part of a driver, for failure to avoid an accident, where his traffic lane is invaded at an instant too close to the subsequent collision to permit a normally-reacting individual to stop or swerve aside.
 
 
 7
 The principle is illustrated by Carolina v. Mack, La.App., 55 So.2d 4, where Mack, attempting to pass three automobiles on the highway, encountered an oncoming car and was forced to turn back into his lane between the first and second cars. In doing so he struck the back end of the first car and pushed it into the path of the oncoming car, resulting in a collision. The driver of the first car sued both Mack and the driver of the oncoming car. Judgment by default was taken against Mack, and the question was whether Pino, the driver of the oncoming car, had been guilty of concurrent negligence in traveling at an excessive rate of speed or in failing to stop. The trial court found that Pino was driving within the speed limit and that the car was projected into his path about 25 feet in front of his car. The Court of Appeals affirmed a judgment for Pino, on the ground that a sudden emergency was created when the plaintiff's vehicle veered into his lane, and that he exercised reasonable care to avoid the accident.
 
 
 8
 On the contrary, the evidence here is ample to support a finding that neither driver exercised ordinary prudence to avoid the collision. The suggestion by counsel that the bus dricer had a right to proceed in his own lane without slowing or turning aside to avoid a collision with another vehicle is utterly without warrant. Both dricers owed a duty to those riding with them, as well as to each other, to make all reasonable efforts to prevent the accident. Each had an opportunity to stop or turn aside, and the evidence warranted a finding that each chose to rely on the other to give way; in such a state of facts, the jury was clearly authorized in finding that neither had exercised reasonable care.
 
 
 9
 The school board's insurer also urges error in the court's instruction that the driver of a school bus is required to exercise the same degree of care as a common carrier-- 'the highest degree of care.' It is pointed out that school buses are excluded from the Motor Carriers Act, LAS-R.S. 45:161-197, and are not regulated by the Louisiana Public Service Commission. In addition, reliance is placed on Roux v. Henderson, La.App., 42 So.2d 163, for the proposition that a school bus driver is required to exercise only ordinary care in the operation of his vehicle.
 
 
 10
 Unfortunately, neither Roux v. Henderson nor Mire v. Lafourche Parish School Board, La.App., 62 So.2d 541, the only other case on the question, settles the point with perfect clarity. In the Roux case, the plaintiff was a helper in the lunch room who was given a ride in the school bus at the superintendent's insistence and as a matter of accommodation. She was injured when the bus skidded on some loose gravel and ran into a clump of bushes. The court stated that she was not a passenger for pay, to whom the highest degree of care was owed, and that she therefore assumed all latent defects in the road.
 
 
 11
 In the Mire case, a seven-year-old child was injured when she was struck by a car in crossing the road after she had alighted from the school bus. Suit was brought against both the driver of the car and the driver of the school bus. The trial court found the automobile driver guilty of negligence and rendered judgment against him, but dismissed the case as to the school board's insurer. The judgment against the automobile dricer was affirmed, and the judgment in favor of the school bus driver was reversed. The court stated that the bus driver was negligent in failing to perform the duties incumbent on a public carrier, to exercise the utmost care; in failing to perform a special duty imposed on him by his contract with the school board, which required him to get out of the bus when loading or unloading children on a main highway, look both ways for approaching cars, and not permit children to get on or off until it was safe for them to do so; and in failing to look in the rear-view mirror for approaching cars. The case presents in part, at least, a holding inconsistent with the Roux case, and it is settled that the federal courts in such a situation must accept the later authority. New York Life Insurance Co. v. Schlatter, 5 Cir., 203 F.2d 184; Branch v. United States Fidelity & Guaranty Co., 6 Cir., 198 F.2d 1007; Yoder v. Nu-Enamerl Corp., 8 Cir., 117 F.2d 488. Therefore, the district court properly considered itself bound by the Mire case, and correctly charged the jury in accordance with its pronouncements. The charge was not predicated on the fact that the school bus was a common carrier but that the standard of care owed by the driver of a school bus is similar to that of common carriers.
 
 
 12
 Both appellants urge that the verdicts were excessive, they being in the amounts of $25,565.90 and $25,455.80 for the deaths of the students who were killed instantly, and $25,785.00 for the death of the student who died in the hospital at 7:00 P.M. on the day of the accident.
 
 
 13
 In a death case in Louisiana the parents are to be compensated for financial loss, here represented by the burial and hospital expenses, and for grief and sorrow resulting from the loss of love and companionship of the minors. The appellants urge that the verdicts are in excess of any obtained thus far in the Louisiana courts in such a case, and that Louisiana law requires that verdicts be 'fair and in keeping with previous awards.' Dinet v. Orleans Dredging Co., La.App., 149 So. 126, 130. Nevertheless, there is no Louisiana authority in recent years reducing an equivalent award in a comparable case, and we cannot reasonably conclude that these awards were not fair or that they reflect passion or prejudice on the part of the jury. McCormick on Damages, pp. 71-72.
 
 
 14
 Finally, error is asserted in allowing Hayes Gray, the driver of the truck, to testify that he was arrested after the accident but that the grand jury returned no true bill against him. This evidence was inadmissible. New York Life Insurance Co. v. Murdaugh, 4 Cir., 94 F.2d 104. However, the court specifically instructed the jury in its charge 'not to consider that testimony in deciding whether or not he was negligent in this particular case.' In the light of this instruction, we must assume that the grand jury's failure to indict Gray had no effect on the jury's verdict in this case.
 
 The judgments are
 
 15
 Affirmed.
 
 
 16
 RIVES, Circuit Judge (dissenting).
 
 
 17
 Under the court's charge the test to be applied by the jury in determining negligence on the part of the truck driver was ordinary care with the burden on the plaintiff, while the highest degree of care was required of the school bus driver, with the burden on his employer to prove his freedom from fault. That is not even handed justice. Each vehicle had equal standing on the highway, the duties of the drivers were mutual and reciprocal, and each should be held to the same standard of care and the same burden of proof.
 
 
 18
 The real contest on this trial was not between the plaintiffs and the two defendants. No one ascribed the slightest fault to the three seventeen year old youths killed in this tragic collision, and there was never any doubt that their parents were entitled to judgments against one or both defendants. The trial was a contest between the two defendants each struggling to prove itself free from fault and to place the entire blame on the other. Under the court's charge it does not seem to me that that contest was fairly conducted, nor that we can assume that the result reached was just and right.
 
 
 19
 Nor do I think the application of such unequal standards was required by Louisiana law as announced in the Mire case, 62 So.2d 541, 544. That case did not involve the duty of a carrier which ceases when the journey ends and the passenger has alighted in a safe place. See Stewart v. New Oreleans Public Service, 4 La.App. 543; 13 C.J.S., Carriers, § 794, p. 1449. Instead it involved the additional duty on the school bus driver to a seven year old child after he had alighted from the bus to help the child avoid being hurt by other vehicles. In that respect the Louisiana Supreme Court said that the Tennessee Cartwright case, (Cartwright v. Graves), 182 Tenn. 114, 184 S.W.2d 373, had 'correctly interpreted the school bus driver's duty'. The Tennessee Cartwright case likewise involved the duty to a small child, six years old in that case, after he had alighted from the bus. It said nothing about the bus operator being a common carrier.
 
 
 20
 However, if we consider that the school bus operator is held to the same standard of care as a common carrier, cf. Annotation, 160 A.L.R. 22, I would still think that when moving vehicles collide on the highway, whether or not one of them is a carrier, at least the same burden of proof should apply to both. See Weddle v. Phelan, La.App., 177 So. 407, 410; McGinn v. New Orleans Ry. & Light Co., 118 La. 811, 43 So. 450, 13 L.R.A.,N.S., 601; Prosser on Torts, 2nd ed. pp. 206-208; 13 C.J.S. Carriers, § 764, p. 1457; Compare Dawson v. Toye Bros. Yellow Cab Co., 15 La.App. 326, 131 So. 716; Thibodeaux v. Star Checker Cab Co., La.App., 143 So. 101.
 
 
 21
 If that position is sound, then under our decision in American Motorists Ins. Co. v. Napoli, 5 Cir., 166 F.2d 24; cf. Winford v. Bullock, 210 La. 301, 26 So.2d 822, 824, the judgments against both defendants should be reversed and the causes remanded in their entirety.
 
 
 22
 I therefore respectfully dissent.