HOOD, Judge.
On February 10, 1964, a warehouse owned by Johnson Chevrolet Company, Inc., was partially destroyed by fire, in Bunkie, Louisiana. Hardware Dealers Mutual Fire Insurance Company had issued a fire insurance policy covering the building, and this policy was in effect at the time of the fire. Pursuant to its obligation under that policy, the insurer paid to Johnson Chevrolet the sum of $5,000.00, and it became sub-rogated to the rights of the insured to recover its loss up to the amount of that payment. Hardware Dealers then instituted this suit against R. J. Willis for the amount which it had paid, alleging that the fire was caused by the negligent acts of an employee of Willis. After trial, judgment was rendered rejecting plaintiff’s demands, and plaintiff has appealed.
Also in effect at that time was a fire insurance policy issued by Home Fire & Marine Insurance Company covering the same building, and pursuant to its obligation under that policy, Home Fire & Marine paid to Johnson Chevrolet the sum of $3,000.00. Plome Fire & Marine, as the subrogee of Johnson Chevrolet, also instituted a separate suit against R. J. Willis to recover its loss, and it appealed from a judgment rejecting its demands. Both of these cases were consolidated for trial and appeal, and judgment is being rendered by us in the companion suit on this date. See Home Fire & Marine Insurance Company v. R. J. Willis, 179 So.2d 449.
Defendant Willis lived in a rented house which was located adjacent to the Johnson warehouse. A few days prior to the accident, Willis had a conversation on his lawn with a negro man, named Ben Chambers, and in the course of that conversation Chambers asked if there was any work which he could do about Willis’ homeplace. Willis told Chambers that he could tear down an old dog pen in the rear of the yard and clean up the area where the dog pen had been, stacking the good lumber in a designated place. For this work, Willis offered to pay Chambers the sum of $3.00, and Chambers accepted. Willis then advanced Chambers $1.00 a day or two before any part of the work was done.
Chambers came to work on the morning of February 10, while Willis was away from home. He proceeded to tear down the dog pen and to clean up the area where it had been located. He stacked the useable lumber as he had been instructed to do, and *444 then he set fire to the trash which had been collected from that area, obviously intending to dispose of the trash by burning it. The fire was started on Willis’ property, but it spread to the dry grass on defendant’s lawn and it got out of control. Finally, the fire spread to the Johnson property on which the warehouse was situated, and it ignited that building, causing it to be partially consumed in flames.
Willis was not present at his home from the time Chambers first reported to work that day until after the fire had spread to the Johnson property. He was notified as soon as the fire reached the warehouse, however, and he immediately returned to his home. He determined at that time that Chambers had started a fire to burn the trash which had been cleaned from the dog pen area, that the fire had been started on Willis’ property, and that this fire had spread to the neighboring Johnson tract. Later that day or the next day, but after the fire had occurred, Willis paid Chambers the sum of $2.00, being the remaining balance which Willis had agreed to pay him for tearing down the dog pen and cleaning up the area.
The trial judge found that Chambers was an independent contractor, that Willis was not responsible for his acts, and that Willis thus was not liable in damages to plaintiff for any acts of negligence which may have been committed by Chambers. Plaintiff contends that the trial court erred in holding that Chambers was an independent contractor. It is argued, on the contrary, that he was an employee of Willis and that Willis was liable in damages for the negligent acts of his employee.
The test to be applied in determining whether a person who is engaged to do a certain work is an independent contractor or an employee is set out in Amyx v. Henry & Hall et al., 227 La. 364, 79 So.2d 483, as follows:
“The term ‘independent contractor’, as was said in the case of Gallaher v. Ricketts, La.App., 187 So. 351, 355, ‘connotes a freedom of action and choice in respect of the undertalcing and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants.’ A contractee-independent contractor relationship presupposes a contract between the parties. It likewise presupposes the independent nature of his business, and is not exclusive as to the means whereby it is accomplished. It should appear that the contract calls for a specific piecework as a unit to be done according to his own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services tobe rendered. It must also appear that a specified price for the overall undertaking is agreed upon; that its duration is for a specified time cmd not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
It is well settled by our jurisprudence that besides other factors, the most important test in determining ‘whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer.’ It is also well settled that whether the employer ‘actually exercises control or supervision’ over the movements and the services rendered by the employee, such a fact is of no great moment, the ‘important question is whether, from the nature of the relationship, he had the right to do so.’ ” (Emphasis added.)
In Shelton v. Barber Brothers Company, La.App. 1 Cir., 94 So.2d 489, the rule is stated as follows:
“As contrasted to an employee, an independent contractor is one independent in business who contracts to perform a specified piece of work for another for a specified price, without *445 being subject in the performance of the contract to the control and direction of his employer except as to the result contracted for; which contract is not subject to tet'mination or discontinuance at the will of either party without a corresponding liability for its breach. * * * ” (Emphasis added.)
And, in Kamm v. Morgan, et al. La.App., 157 So.2d 118, our brothers of the Fourth Circuit held:
“ * * * Thus, if the employer possesses the right to direct the manner in which the work is performed by the employee, there is clearly a master-servant relationship established. However, if the employer or contractor is only interested in the end result and retains no right to supervise the manner in which the contract or work is performed, then the party rendering the service is characterized as an independent contractor.” (Emphasis added.)
Other cases where this rulé has been applied and which we consider to be applicable are: Malloy v. Buckner-Harmon Wood Contractors, La.App. 2 Cir., 100 So.2d 242; Gresham v. Speights, La.App. 2 Cir., 133 So.2d 846; Suckle v. Hartford Accident & Indemnity Co., La.App. 2 Cir., 163 So.2d 564; Bryant v. United States Fidelity & Guaranty Co., La.App. 3 Cir., 163 So.2d 95 (writ refused); Braud v. Theriot, La.App. 1 Cir., 170 So.2d 679.
Defendant calls our attention to the case of Levy v. McWilliams et al., 13 La.App. 444, 127 So. 761, in which plaintiff demands damages to his property caused by a fire which spread from defendant’s adjoining lands. Defendant had contracted with one C. B. Wells to clear stumps from his property, but the contract did not contemplate that fire would be used in disposing of the waste. An issue was presented as to whether Wells was an independent contractor or an employee of the defendant. The court found that all of the elements essential to establish that Wells was an independent contractor were present, and in rejecting plaintiff’s demands against defendant, the court said:
“We find that defendants did not retain the right to supervise the work of Wells, nor to direct him in carrying it out. No doubt they could have prevented him from using fire in the removal of the stumps had they known that he intended to do so, but they certainly had no knowledge of this intention, and the contract provided for a different method of operation.”
It is apparent from the authorities cited that in order for Chambers to be classified as an independent contractor in this instance it is essential that the facts establish: (1) That there was an actual contract between Willis and Chambers for a specific undertaking or amount of work; (2) that the undertaking or piece of work was to be performed for a specified price; (3) that Willis was not to have the right to control and direct Chambers in the performance of that work, except as to the result contracted for; (4) that a definite period of time was fixed by agreement within which the undertaking was to be performed; and (5) that the contract was not subject to termination or discontinuance at the will of either party without a corresponding liability for its breach.
We have considered the facts in the instant suit with these rules in mind. Chambers did not testify at the trial, so the only evidence in the record as to the nature of the agreement entered into between him and Willis is the testimony of the defendant. According to Willis’ statements, he told Chambers that the only work which he had for him to do was “to clean up the dog pen that was in the back of my yard,” and that he was to stack what good lumber there was on the side of the property. Although nothing was said about the control which Willis was to exercise over Chambers, Willis states that at all times he “had the right to tell Chambers when to come to work, what to do after he got there and con *446 trol his duties.” He states, however, that he was not present at the house when the work was being done, so he did not actually •give him any directions as to performing any part of it, although he had the right to do so.
It is apparent from the testimony of Willis that Chambers was subject to the control and direction of his employer in performing the work which he had undertaken to do. Also, we think this is a reasonable and logical interpretation of the agreement. It would be unrealistic, we think, to hold that Willis, in engaging Chambers to perform this menial type of common labor around his home, intended to surrender his ■control over the employee as to the time or ■manner in which the work was being done. Our conclusion is that Willis did have the right to direct and control Chambers in the ■performance of this work, although he was not present and did not actually exercise -that right.
The evidence also shows that no definite ■time was fixed by agreement within which the undertaking was to be performed. Willis simply told Chambers that he would ■pay him $3.00 for performing this work, and 'he gave him a portion of that amount in .advance. Nothing was said as to when the -work was to be started or when it was to "be concluded.
We think either party could have terminated or discontinued the agreement without any liability on his part. The agreement involved only a small sum of money, but in •determining the questions presented here ■we have disregarded that fact except insofar as it may throw some light on what may 'have been the intentions of the parties. Since there was no agreement as to how the work was to be performed, and since Willis ■could have directed Chambers in the performance of that work and no time was fixed for the performance of that undertaking, we feel that there could have been mo liability for breach of contract on the part of either party in the event one of them had terminated the agreement before the work was performed.
The evidence, therefore, establishes two of the elements which are essential to classify Chambers as an independent contractor, namely, that there was an actual contract for a specific undertaking, and that the undertaking was to be performed for a specified price. The evidence fails to establish, however, any of the other facts or circumstances which are necessary to warrant classifying him as an independent contractor. It fails to show, for instance, that Willis had waived or forfeited the right to control and direct Chambers in performing the work, or that a definite period of time had been fixed by agreement within which the undertaking was to be performed, or that neither party could terminate the contract without a corresponding liability for its breach. We find, therefore, that the trial judge erred in holding that Chambers was an independent contractor. On the contrary, we think the evidence establishes that he was an employee of Willis at the time the fire occurred.
The defendant argues next that the evidence fails to show negligence on the part of Chambers. Chambers did not testify at the trial, and there were no eyewitnesses as to who started the fire, or what efforts were made to prevent it from spreading. Defendant thus contends that the fire loss could have been caused by the act of a third party or by an unavoidable accident. We find no merit to this argument. The defendant arrived at the scene shortly after the warehouse caught on fire. He testified, without obj ection, that Chambers told him then that he had started the fire on defendant’s property in order to burn the trash, and Willis stated that there was no doubt in his mind but that the trash fire which had been started on his own property is the fire that caused the damage to the Johnson building.
Mr. Johnny Johns, Fire Chief of the Bunkie Fire Department, testified that when he arrived at the scene he saw a grass fire burning in Willis’ back yard, under the con *447 trol of Chambers, that the grass fire extended to a point within one foot of the warehouse on the Johnson property, that black smoke in that area indicated that the grass fire had ignited some waste oil which was on the ground adjacent to the building, and that the warehouse obviously had been ignited by that fire. The official report of the fire chief was offered in evidence by defendant Willis, and this report contains the following statements:
“Burning trash, leaves, and trash from dog pen in back yard of home of R. J. Willis — (Trash burning ignited dry grass) (Burning grass worked itself towards waste oil drainage ditch alongside of rear of warehouse bldg.) — ignited warehouse.”
“Mr. Willis says Chambers a c/m approached him for wk. to clean up the yard. (Chambers piled up trash & leaves. Set on fire.) — (Fire ignited dry grass. Chambers says he was unaware there was waste oil alongside of the bldg., just about had grass under control when it ignited oil ditch and bldg, immediately caught fire. R. J. Willis at work at time fire started.”
The trial judge found that Chambers, on his own initiative, decided to burn the trash which he had accumulated from the dog pen, and in doing this “he apparently permitted the fire to spread through dry leaves or grass onto the premises of Johnson Chevrolet Company, Inc., which adjoined defendant’s property.” We think the evidence amply supports the conclusions reached by the trial judge, and that the evidence establishes that Chambers started a fire on the Willis property for the purpose of burning trash, that this fire ignited and spread through dry grass on the Willis lawn until it reached the Johnson property and the warehouse located on it. Since these facts have been established by a preponderance of the evidence, it is unnecessary for us to consider whether the doctrine of res ipsa loquitur is applicable.
Our conclusion is that Chambers-was negligent in burning trash in close proximity to the dry grass on defendant’s-property, in failing to maintain adequate control of the fire, and in permitting the flames to spread to the adjoining Johnson tract.
The defendant contends alternatively that Chambers was never authorized to burn the trash, and that he thus exceeded his authority in starting a fire on defendant’s property.
Willis testified that he did not give Chambers “any specific orders to dispose of the trash, I just told him to go ahead and stack the good lumber on the side, * * * I didn’t tell him in any way how to dispose of the * * * (trash) * * Willis concedes, however, that it was mutually understood that Chambers was to “dispose of the stuff.” It is apparent from his testimony therefore, that there was a mutual understanding that Chambers was to dispose of the trash in some manner, but that Willis gave him no directions at all as to how that was to be accomplished. He did not tell Chambers either to burn the trash or to not burn it.
The established jurisprudence of this state is that an employer is responsible for the- wrongful acts of his employee, committed in furthering the business of the employer and within the scope of the employment, even though the servant acted contrary to or in defiance of the express-rules or instructions of the master. See Bordelon v. Great American Indemnity Co., La.App. 3 Cir., 124 So.2d 634, and authorities therein cited.
In 57 C.J.S. Master and Servant §. 570, pp. 303-305, the rule is stated as follows :
“ * * * A servant has implied authority to do what is usual, customary, and necessary to fulfill the duty intrusted to him by the master, and accordingly an act is within the scope *448 of a servant’s employment where it is reasonably necessary or appropriate to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master.”
In the instant suit the actions of defendant’s employee in setting fire to the trash were reasonably necessary or appropriate to accomplish one of the purposes of his employment, that is the disposing of the trash which had been accumulated in cleaning out the dog pen. Some other method of disposing of this waste could have been employed, but Chambers had not been told to use any specific method, and one common way of disposing of trash is to burn it. In starting a fire for that purpose, Chambers was promoting the interests of his employer by carrying out the duties of his employment, he was not violating any instructions which he had received from his employer, and we think Willis should reasonably have contemplated that the trash might be disposed of by burning it.
We conclude that under the doctrine of respondeat superior the defendant is liable in damages for the negligent acts of his employee, unless he is relieved from liability on some other legal ground.
Defendant contends: (1) That the proximate or intervening cause of the fire damage was Johnson’s negligence in permitting flammable oil to stand in a ditch located immediately adjacent to the rear of the warehouse; and (2) that plaintiff is barred from recovery because of contributory negligence on the part of its insured, Johnson, in maintaining an open oil soaked ditch adjacent to the warehouse.
The evidence establishes that a shallow ditch was located between the two tracts of land, immediately adjacent to- the back of the warehouse, and that oil had been permitted to drain into or to- collect in that ditch. The fire chief of the Bunkie Fire Department who investigated the fire after it had occurred, concluded that the oil in a part of the ditch had burned and had ignited the warehouse. He expressed the opinion that if the oil had not been there the building would not have caught on fire.
The defendant bears the burden of proving contributory negligence. In this instance, we have concluded that he has failed to sustain that burden of proof for two reasons. One is that the evidence fails to convince us that the fire damage to the warehouse would have been avoided if the oil soaked ditch had not been there. Fire Chief Johns stated that the grass fire had stopped about one foot from the building, but that the fire extended from that point or line the remaining short distance over the oil soaked ground to- the warehouse, and that the building “really went into flames quick.” Mr. Fred Smith, another member of the fire department, explained that varso-1 or oil must have been placed along the back of the warehouse to “keep the grass from growing against the building.” The testimony of Mr. Smith, considered with other evidence to the effect that the ground near the building was soaked with oil, indicates to us that there was little or no grass immediately adjacent to the building because the grass had been killed by allowing oil to soak into the ground in those areas. If there had been no oil on the ground, it is logical to assume that the dry grass would have extended up to the building and that the burning grass could have set fire to the warehouse just as effectively as did the burning oil. We think the defendant has failed to show, therefore, that the damage to the building would have been avoided if oil had not been allowed to- soak into- the ground in that vicinity.
Our second reason for concluding that plaintiff’s insured is free from contributory negligence is that it could not reasonably foresee that defendant would permit a grass fire to get out of control and to cross over the property line. It thus was *449 under no duty to warn defendant of the fact that there was oil in the ditch or that the warehouse would bum.
In Ellis v. New Orleans Great Northern R. Co., 169 La. 797, 126 So. 64, plaintiff’s property was damaged by fire caused by sparks from trains operated by defendant. Defendant pleaded contributory negligence, contending that plaintiff should have plowed a fire guard between his property and the railroad right-of-way. Our Supreme Court rejected this plea of contributory negligence, holding, “ * * * it not being the duty of the landowner to take unusual precautionary measures to protect his property from injury by the railroad company, which operates such dangerous agencies as locomotive engines near his premises, the duty resting on the latter to adopt the necessary cautionary measure.”
The facts in Boudreaux v. Ledet, La.App. 1 Cir., 4 La.App. 415, are similar to those presented here. In rejecting defendant’s plea of contributory negligence, the court said:
“ * * * This fire had been started by defendant on his own property, and with which plaintiff had no right to interfere. He had a perfect right to expect that defendant would keep a watchful eye over the fire or would adopt means for its control or suppression. He could not be expected to foresee that defendant would fail to exercise ordinary care in handling the situation and that the' fire would be negligently permitted to cross over the property of Braud and to then invade his own and to ignite his cord-wood that had been stacked in the swamp. It is impossible from such a state of facts to reach the conclusion that because of plaintiff absenting himself temporarily he was guilty of contributory negligence towards the defendant.”
Our conclusion is that plaintiff’s insured, Johnson, was not negligent in allowing oil to become soaked into the ground imrne-diately adjacent to the warehouse building, and thus plaintiff is not barred from recovery because of the contributory negligence of its insured. We also find no merit to defendant’s argument that the proximate or intervening cause of the fire damage was Johnson’s negligence in permitting oil to stand in the ditch near the warehouse. On the contrary, we conclude that the sole proximate cause of the accident was the negligence of Chambers in the particulars which we have already pointed out.
For the reasons herein assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of plaintiff, Hardware Dealers Mutual Fire Insurance Company, and against defendant, R. J. Willis, for the principal sum of $5,000.00, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit. The costs of this appeal are assessed to defendant-appellee.
Reversed and rendered.