## LAW AND CHANCERY COURT OF THE CITY OF NORFOLK

Linda M. Brunson

v.

Virginia L. Daughtrity

November 7, 1969

Case No. (Law) 5505

By JUDGE EDWARD L. RYAN, JR.

[This] personal injury action was compromised and dismissed with prejudice on October 10, 1969.

On October 1, 1969, *defendant* took a discovery deposition from Dr. Julian W. Selig, Jr., one of the plaintiff's attending physicians. The deposition was taken pursuant to an order entered by this court.

On October 27, 1969, Dr. Selig filed with the court a motion asking for "an award of an expert fee against the defendant in the amount of Forty-five Dollars ($45.00) for services rendered in the taking of discovery depositions on October 1, 1969." Personal counsel for Dr. Selig says that even though he is not a party to this suit he may move for such award and judgment under the 1966 amendment to § 14.1-190 of the Code of Virginia which is as follows:

14.1-190. *Allowances to other witnesses.*

Every witness who qualifies as an *expert witness*, when compelled to attend and testify, shall be allowed such compensation and mileage as the court may, *if requested in its discretion*, order without any regard to any limitation above set forth, but the same shall be paid

by the party in whose behalf he shall testify. (Italics added.)

Dr. Selig was compelled to attend and testify by order of the court. The sole issue, therefore, is as to whether the doctor qualified as an expert witness.

Defendant says that Dr. Selig was discovered purely as to fact matters, as shown by the copy of the deposition presented to the court. Dr. Selig is a psychiatrist and treated plaintiff for an emotional illness. In his written report of June 4, 1969, he stated "It is my impression that her illness was triggered by an accident of December, 1968." In a later report, dated August 22, 1969, the conclusion was made that "It is my impression that her psychiatrist illness was triggered by an accident and immediate subsequent events in December of 1968." Defendant says that these are statements of *fact* made by the attending physician. Also, she says that Dr. Selig, in his reports, gave no supporting or "foundation" facts for arriving at these conclusions, and that the purpose of the discovery deposition was to search out any additional facts. Defendant denies that she sought any expert opinion from the doctor, or called him to testify in her behalf as an expert.

The deposition, upon transcription, ran to 23 pages of double-spaced typing. After examining the doctor as to his qualifications, methods of examination, charges, and other preliminary matters, a large portion of the questions related to the Minnesota Multiphasic Personality Inventory, which is a psychological testing sometimes referred to as "MMPI." The doctor explained that this was a standard personality test consisting of 550 questions, scoring being made on a "computer type of machine." The test is an adjunct to the doctor's overall treatment and evaluation of the plaintiff. Defendant's attorney asked multiple questions as to the MMPI, but the deposition fails to reveal that expert opinion was called for. The questions were confined to the patient, the results of the MMPI test, and the doctor's conclusions, all of which dealt with facts.

At page seventeen of the deposition inquiry was made as to the doctor's conclusions that the accident in controversy "triggered" the emotional illness. The doctor was asked "Are you saying, Doctor, that her condition in your professional opinion and judgment was more

likely than not caused by this accident?" to which the Doctor answered, "Yes." But this was followed by a searching examination as to how the doctor reached this conclusion factually, and how he disassociated other influences or factors that might have a causal relationship other than the accident in controversy. In short, the defendant was searching for *facts* within the ambit of the doctor's knowledge of the plaintiff, resulting from his treatment, that would have been determinative of the issue. The doctor responded with a multitude of findings and facts that supported plaintiff's claim that the accident had precipitated her emotional disorder.

At common law no witnesses' fees were paid." 58 Am. Jur., *Witnesses*, § 874.

> The generally accepted American rule is that in the *absence of statute* an expert stands the same as any other witness and may be compelled to testify without being paid specially for his testimony as for a professional opinion, *although his knowledge of the facts may have been acquired through scientific study and professional practice. . . Ibid.*, § 880 (Italics added.)
>
> The matter of compensation of expert witnesses is regulated by statute in some jurisdictions; for example, it is sometimes provided that expert witnesses shall be entitled to compensation or additional compensation to be fixed by the court, subject to any statutory maximum limit. *Ibid.*, § 881.

In *Penouilh* v. *Toye Bros. Yellow Cab Co.*, 1 So. 2d. 131 (La. 1941), the plaintiff who prevailed sought to have taxed as costs the appearance fee of her attending physician who was called "as an expert medical witness." While the situation differs from the personal claim of Dr. Selig in the instant case, *Penouilh* is instructive as to the demarcation between fact and expert witnesses. Adopting the following rationale, the court reduced substantially the costs awarded to the expert medical witness:

> There is no longer any doubt that fees of expert witnesses may be taxed as costs to be paid by the party cast even though the experts have

not been appointed by the court, but have been summoned by one of the parties. . . .

But when we come to value those services, we find ourselves unable to fix their value at anything like the amount awarded below. In the first place, although Dr. Loria contends that 90 per cent of his testimony was given as an expert *and only 10 per cent as the physician who attended Mrs. Penouilh,* we have carefully reread the voluminous record and, without hesitation, say that not more than one-third of his testimony was given as an *impartial expert witness.* His testimony given in connection with his services as *attending physician* cannot be taken into consideration on this rule.

In *Levy* v. *McWilliams, supra,* (13 La. App. 444, 129 So. 170), we said: "that such fees and expenses should be taxed as costs only where it is *manifest* that the testimony of the witnesses is in reality necessary as *elucidating some technical or scientific subject,* and that, where the witness is not in reality placed on the stand to give such information, but is, in fact, *called to testify as to facts of the case,* the fees and expenses of such witnesses should be paid by the party who summons them."

*Alexander* v. *Watson,* 128 F.2d 627 (4th Cir. 1942), involved claims by an attorney and an accountant for the award of fees for testimony given at trial as supposed experts. In denying the claims the court said the following:

It is perfectly clear that Watson and Sitterson were not entitled to the allowance for their services in testifying as witnesses. They did not testify as experts, *but as to facts within their personal knowledge.* This knowledge they had acquired *as agents and attorneys* for the corporation in receivership; and upon the trial of an action to which that knowledge was pertinent, the receivers were entitled to have them testify as ordinary witnesses for no other compensation than the fees provided by law.

Certainly an allowance could not be made them on the theory, intimated in the testimony of Watson quoted above, that in giving testimony they gave to their former client the benefit of information which they might otherwise have withheld; for the information belonged to the client and they had no right to withhold it. *Dorr* v. *Camden, supra. And quite apart from this, the giving of testimony as to facts within one's knowledge is a matter of public duty, and one may not impose any condition upon the performance of that duty which the law does not authorize.* Except in the case of expert witnesses, we know of no authority which would justify an allowance to witnesses in excess of ordinary witness fees, however valuable their testimony may have been to the parties calling them to testify.

The 1966 amendment to § 14.1-190 of the Code is in derogation of the common law and must be strictly construed. It is manifest from Dr. Selig's deposition that he would have had no knowledge of the case, and would not have been called as a witness, in the absence of his services to the plaintiff. In Rules of Court (Va.) 4:1(a) it is provided that "The deposition of a witness whose first connection with the case was *his employment to* give his *opinion as an expert* may be taken only at the instance of the party who employed him." Clearly, Dr. Selig does not fall under his definition. He was employed to treat, and as such he became a fact witness. Finally, "A party shall not be deemed to make a person his own witness *for any purpose* by taking his deposition." Rules of Court (Va.) 4:1(f).

A sketch of an order denying the motion may be presented by counsel for defendant.