## CIRCUIT COURT OF ALBEMARLE COUNTY

Victor Villar-Gosalvez

    v.

Amparo Villar-Gosalvez et al.

June 2, 2004

Case No. (Chancery) 03-12794

BY JUDGE PAUL M. PEATROSS, JR.

This matter is before the Court on Petitioner's Motion *In Limine* regarding the applicability of expert witness fees as provided by the Rules of the Supreme Court of Virginia. Petitioner files this motion on behalf of certain expert witnesses identified in this matter who, according to Respondent's claim, are not entitled to an expert's reasonable fee under Rule 4:1(b)(4)(C) for their time spent being deposed as experts pursuant to Rule 4:1(b)(4)(A)(ii) under the same subsection. Petitioner seeks a ruling as to whether these physicians, though categorized as "attending or treating" physicians who will testify on facts learned and opinions formed in providing medical care, can still be considered experts for purposes of receiving an expert's fee for their time being deposed when additional expert opinion was given. After a careful review of case authority within numerous federal and state jurisdictions, this Court rules that despite the fact that the treating physicians may testify as to their own care and treatment of a certain patient, they may still qualify as expert witnesses in order to receive a reasonable fee if they also testify on opinions "acquired or developed in anticipation of litigation or for trial."

*Factual Background*

Petitioner, Victor Villar-Gosalvez, entered into this action against Respondent, Amparo Villar-Gosalvez, on June 2, 2003. Petitioner sought to set aside conveyances received by Respondent and made by Carlos Villar-Palasi, the father of both parties herein named, claiming the

conveyances are void because of Mr. Villar-Palasi's lack of mental capacity and Respondent's knowledge thereof. The two conveyances in dispute were executed by deed on February 26, 2003. Respondent received an equal share as a joint tenant with a right of survivorship in the two pieces of land described in the deeds.

Petitioner currently serves as Guardian of Mr. Villar-Palasi and Conservator of his estate. He was appointed to such positions by Order of this Court on April 28, 2003, because Mr. Villar-Palasi was adjudged legally incapacitated pursuant to § 37.1-134.6 *et seq.* of the 1950 Code of Virginia, as amended.

On March 25, 2004, Petitioner served his Disclosure of Expert Witnesses, which included Dr. Suzanne Holroyd and Dr. Karen Poehailos, to Respondent's counsel by mail. According to Petitioner's counsel, Dr. Poehailos has also been identified as an expert witness by Respondent. The record shows that Dr. Holroyd, who works at the Department of Psychiatry at the University of Virginia Hospital, and Dr. Poehailos both treated Mr. Villar-Palasi prior to this action and prior to being named as expert witnesses.

Pursuant to Rule 4:1(b)(4)(A)(ii) of the Rules of the Supreme Court of Virginia, the Respondent deposed both witnesses regarding the mental status of Carlos Villar-Palasi at the time he executed the disputed deeds. On April 20, 2004, Dr. Holroyd was deposed by Respondent's counsel, and a written transcript was made. However, Dr. Poehailos' deposition was not transcribed, and, therefore, the content discussed, whether fact based or opinion based, cannot be determined by the Court. Both witnesses have now submitted a bill for a "reasonable fee" to Respondent to be paid for their time spent in preparing for and directly responding to the deposition pursuant to Rule 4:1(b)(4)(C). However, Respondent has indicated that she will not make such payments, asserting that both witnesses are "attending or treating" physicians and, in spite of their identification as experts, are not entitled to payment as experts for their time spent being deposed.

## Issue Presented

Can a physician receive an expert witness' "reasonable fee" for her time spent being deposed by an opposing party even though the physician was a treating physician and will testify as to both facts and opinions?

## Discussion of Authority

The general issue concerns an interpretation of Rule 4:1(b)(4) of the Rules of the Supreme Court of Virginia which states:

> Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of the Rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
>
> (A) ... (ii) A party may depose any person who has been identified as an expert whose opinion may be presented at trial, subject to the provisions of subdivision (b)(4)(C) of the Rule concerning fees and expenses.

The applicable section of subdivision (b)(4)(C) states:

> Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent and expenses incurred in responding to discovery under subdivision (b)(4)(A)(ii).

To this Court's knowledge, the courts of Virginia have not ruled on an exact interpretation of the language in Rule 4:1(b)(4), though the issue presented, whether an attending physician's testimony should be regarded as that of an expert witness or an ordinary witness, was given treatment in *Brunson v. Daughtrity*, 6 Va. Cir. 459 (1969). There, the circuit court ruled that the attending physician could not receive an expert's fee because the deposition of such witness was "confined to the patient, the results of the MMPI test, and the doctor's conclusions, all of which dealt with facts." *Id*. at 460. This case can be distinguished from the one at hand on two grounds. First, and most importantly, the court in *Brunson* was not operating under the current language of Rule 4:1, but was relying on now outdated language, specifically found in 4:1(a):

> The deposition of a witness whose first connection with the case was his employment to give his opinion as an expert may be taken only at the instance of the party who employed him.

The *Brunson* court placed a heavy emphasis on the fact that the testifying physician was originally "employed to treat," not to give his opinion, and "as such he became a fact witness." *Id*. at 463. The current language of Rule 4:1 makes no distinction between witnesses previously hired for treatment and

witnesses hired solely to give their expert opinion. Merely because a physician had treated a patient before a legal action was instituted, that physician's status as a witness, and hence her opinion, does not become "ordinary" and "non-expert" when hired for litigation.

Secondly, the Court ruled that in disallowing the witness from charging an expert's fee, the deposition had failed to reveal that expert opinion was called for by the deposing party; thus the witness' status was rendered "ordinary." *Id.* at 460-61. Here, Dr. Holroyd's deposition reveals that she was asked some questions which required answers beyond the patient, the results of any tests, and her past conclusions. She was asked questions regarding hypothetical situations that required on-the-spot analysis using her expert opinion. Further, she was asked to explain medical definitions and use actual expert opinion, the type of opinion that was supposedly not asked in *Brunson*. Being that Dr. Poehailos' deposition was not made available, the Court cannot render an opinion as to whether, beyond ordinary factual questions, expert opinion was called for by the Respondent. Nonetheless, the rationale used in the *Brunson* case is effectively overruled by the current language in Rule 4:1(b)(4).

Respondent submits *Congrove v. St. Louis, S.F. Ry.*, 77 F.R.D. 503 (W.D. Mo. 1978), as a persuasive interpretation of the language in Rule 4:1(b)(4). Federal Rule of Civil Procedure 26(b)(4), before its amendment in 1993, mirrored Rule 4:1(b)(4) of the Rules of the Supreme Court of Virginia, and as such, this Court may consider federal court interpretations in guiding this opinion. *Congrove* relied on the Advisory Committee's Notes to the 1970 amendments to Rule 26:

> [26(b)(4)] does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Advisory Committee's Notes, 48 F.R.D. 487, 503. In *Nelco Corp. v. Slater Electric, Inc.*, a treating physician was denied an expert's fee under that same rational:

> the mere designation by a party of a trial witness as an Aexpert≅ does not thereby transmute the experience that the expert witness acquired as an actor into experience that he acquired in anticipation of litigation or for trial.

80 F.R.D. 411, 414 (E.D. N.Y. 1978). As the court in *Grant v. Otis Elevator Co.* pointed out, "before the 1993 amendments, Rule 26(b)(4) dealt

with expert opinions that were 'acquired or developed in anticipation of litigation or for trial'." 199 F.R.D. 673, 676 (N.D. Okla. 2001). Currently, the federal rule has no requirement that the expert testify on opinions acquired or developed in anticipation of litigation, but only states: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). Thus, the *Congrove* court's ruling no longer applies to the current version of Rule 26(b)(4), but it can prove resourceful for purposes of this opinion, as can other opinions, state jurisdictions included, which interpret an identical statute.

Under Rules 4:1(b)(4)(A)(ii) and (C), a reasonable fee must be paid "by the party seeking discovery" simply when "any person who has been identified as an expert whose opinion may be presented at trial" is deposed on expert opinions "acquired or developed in anticipation of litigation or for trial." The record shows that on March 25, 2004, Petitioner properly disclosed his expert witnesses, Dr. Holroyd and Dr. Poehailos. Further the record shows that Dr. Holroyd was questioned by Respondent's counsel not only on facts concerning her past impressions of and occurrences with Mr. Villar-Palasi, but also on hypothetical possibilities of what the patient may or may not have been able to do based on given situations presented by Respondent's counsel during deposition. Dr. Holroyd also answered questions pertaining to generally accepted procedures and medical expert definitions. Testimony regarding medical procedures and definitions is not the equivalent of fact testimony discussed in the Advisory Committee's Note. When asked whether the doctor had prepared for the deposition, she stated that she had done so by reviewing the patient's chart twice in conjunction with speaking to Petitioner's counsel. Respondent then asked if there were any other opinions that the doctor intended to offer at trial on the case. This line of questioning is seeking to discover evidence "acquired or developed in anticipation of litigation or for trial."

This Court holds that Respondent's questions regarding Mr. Villar-Palasi's ability to understand certain types of contracts and gifts and certain factors that would have influenced Mr. Villar-Palasi to make a gift or enter a contract are questions of a nature that seek to discover opinions developed for litigation. During the course of Dr. Holroyd's treatment of the patient, she, as a doctor, was not concerned as to what types of gifts the patient could make. Since the litigation had not yet risen, her concern was only for the patient's physical and mental condition, not his possible liability in entering legally binding contracts and making gifts. But, after reviewing the patient's chart and speaking with Petitioner's counsel, Dr. Holroyd had to evaluate the patient's condition in a new light, specifically on his mental capacity to understand gifts of different natures. In fact, during Respondent's deposition, Dr. Holroyd changed her opinion as to what types of contracts the patient

would be able to mentally understand based on Respondent's continued hypothetical questions. Clearly, Respondent's counsel was seeking to ascertain what information the doctor would testify on concerning the particular deeds in dispute, and the patient's mental capacity at that time. Though testimony given on the patient's mental capacity is fact testimony because it relates to a particular occurrence and not an opinion formed in preparation for trial, testimony as to what the patient would and would not be able to do based on that mental capacity is not necessarily of the same sort if it was developed separately from the actual course of treatment. If Dr. Holroyd was not used for the deposition, a non-treating expert could instead review Dr. Holroyd's charts, form an opinion based on the charts, and then apply that opinion in evaluating the same types of hypothetical questions posed by the Respondent regarding the patient's capacity to understand gifts and enter contracts of differing degrees. This Court is making a distinction between expert opinions actually formed at the time of treatment, which are facts, and expert opinions formed in regard to a specific inquiry after reviewing the recorded opinions. Therefore, Dr. Holroyd testified on two areas: opinions made during treatment, and opinions made after evaluating the old ones in a new light, specifically for litigation and trial.

The inquiry now becomes whether or not an expert witness should be compensated according to 4:1(b)(4)(C) when giving testimony on facts witnessed prior to litigation and on opinions developed in anticipation of litigation. Even the *Congrove* court recognized this same problem in deposing a treating physician:

> Because plaintiff is not being required to pay Dr. Hollo an expert's witness fee ... he may not, of course, in deposing Dr. Hollo, discover facts and opinions "acquired or developed [by Dr. Hollo] in anticipation of litigation or for trial."

*Congrove*, at 505, n. 3. This note reveals that even a treating physician could develop further expert opinions in preparation for the deposition. Other federal courts have concluded the same as well: "a witness sought to be discovered may be an 'expert' as to some matters and an 'actor' as to others." *Nelco Corp.*, 80 F.R.D. at 414; see also *Salas v. United States*, 165 F.R.D. 31, 33 (W.D. N.Y. 1995) (holding that "when the doctor's opinion testimony extends beyond the facts disclosed during care and treatment of the patient and the doctor is specifically retained to develop opinion testimony, he or she is subject to the provisions of Rule 26" ). This Court now turns to other jurisdictions, state included, that have interpreted a statute identical to Rule

4:1(b)(4) in order to find a suitable method for determining such a physician's status for purposes of receiving a reasonable fee.

In *McCoy v. Black*, the Court of Civil Appeals of Oklahoma held that a treating physician who testified on opinions "based both on facts gleaned from examination of a party and consideration of matters within the physician's expertise" was entitled to a reasonable fee. 1997 Okla. Civ. App. 78, 949 P.2d 689, 694 (Okla. App. 1997). The Oklahoma statute in issue, Oklahoma Discovery Code, 12 O.S. Supp. 1994 § 3226(B)(3)(a), is identical to Rule 4:1(b)(4) and to the pre-1993 federal rule. The *McCoy* court relied on the "crucial inquiry" posed in *Adkins v. Morton*, 494 A.2d 652, 657 (D.C. App. 1985):

> Courts and commentators now widely recognize the distinction between those experts whose knowledge and views lie within the ambit of Rule 26(b)(4) and those who do not. ... In making this distinction, the crucial inquiry is whether the facts and opinions possessed by the expert were obtained for the specific purpose of preparing for the litigation in question; if so, Rule 26(b)(4) governs their discovery.

Using the above analysis, the *McCoy* court held that the physician who was retained to examine the plaintiff *after* litigation could still be considered an expert despite the fact that treatment was also given. *McCoy*, 1997 Okla. Civ. App. 78, 949 P.2d 689 at 694. The case before this Court is of a slightly different nature: where the physician was retained to give treatment *before* litigation, but then rendered opinion testimony in preparation for litigation, thus falling into the *Nelco Corp.* court's classification of "an 'expert' as to some matters and an 'actor' as to others." The *McCoy* court did in fact consider the status of such a physician:

Where a party seeks discovery of facts and opinions of a physician who, *prior to anticipated or commenced litigation,* has *treated* a party whose condition is at issue, and whose opinion based *both* on facts garnered in the course of his patient's treatment *and* consideration of matters outside of his patient's treatment will be introduced at trial, i.e., *both* as an "actor" or "viewer" *and* as an "expert" on consideration of matters within the physician's realm of expertise,—to the extent the physician's opinion is based on consideration of matters outside the facts garnered by examination and treatment of the party, the physician is considered an "expert" under Rule 26(b).

Applying this rationale, along with the "crucial inquiry," this Court finds that Dr. Holroyd is in fact an expert under Rule 4:1(b)(4). The Court has already determined some of the questioning involved "consideration of matters

outside" of Mr. Villar-Palasi's treatment but within Dr. Holroyd's "realm of expertise." Furthermore, under the crucial inquiry, Dr. Holroyd had reviewed the patient's file and discussed matters surrounding the deposition with the Petitioner's counsel, thus revealing that certain opinions were obtained for the specific purpose of preparing for the litigation. As further evidence of the doctor's separate formation of opinions, the deposition discloses that her opinion as to what contracts the patient could and could not comprehend changed during the course of questioning. If this is not opinion formed for the purpose of litigation, then nothing presented by an expert ever could be. Knowing that Dr. Holroyd had prepared for the deposition and had spoken with the opposing party's counsel, Respondent must compensate the doctor for her time spent responding to questions at the deposition even though fact testimony was given as well as expert opinion.

The content of Dr. Poehailos' deposition by Respondent is not available for review by this Court for it to make a determination of whether expert opinion was called for by Respondent. Therefore, the Court is unable to issue a ruling as to whether or not Dr. Poehailos is entitled to a reasonable fee under Rule 4:1(b)(4)(C).

## Conclusion

In response to Respondent's Motion *in Limine,* the Court rules that, as interpreted, Rule 4:1(b)(4) of the Supreme Court of Virginia allows Dr. Holroyd to receive a reasonable fee for her time spent being deposed by Respondent because she testified not only on opinions formed during treatment but also on opinions formed in development of the deposition. Since Dr. Poehailos' deposition is unavailable for review, the Court makes no ruling as to her status as an expert or her right to an expert's reasonable fee.